Franz Xavier HOLZAPFEL

v.

W. J. WYRSCH, Acting District Director, Immigration and Naturalization Service, and William P. Rogers, Attorney General of the United States, Appellants.

No. 12587.

United States Court of Appeals Third Circuit.

Argued Sept. 18, 1958.

Decided Oct. 9, 1958.

Herman Scott, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellants.

Harold L. Weiss, Paterson, N. J., for appellee.

———◆———

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of New Jersey setting aside an order for the deportation of the appellee.

The relevant facts are undisputed. Appellee is a 21-year-old German alien who last entered the United States in June or July 1953. On February 27, 1957, he was convicted of the offense of open lewdness in the County Court of Passaic County, New Jersey. Pursuant to the New Jersey Sex Offenders Act[1] he was committed prior to sentencing to the Menlo Park Diagnostic Center for a complete physical and mental examination. The report of his examination indicated that his conduct, which constituted the offense, represented a compulsive and repetitive form of behavior to-

1. N.J.S.A. 2A:164–1 et seq.

-ward which he had been impelled since the age of 18. The county court on March 29, 1957, after consideration of the report and recommendation of the diagnostic center, ordered and adjudged that appellee "be confined in the New Jersey State Reformatory at Annandale, sentence be suspended and defendant is placed in the custody of the Probation Officer for a period of three years, and one of the conditions of Probation be that the defendant is to take psychiatric treatment."

Deportation proceedings were thereafter instituted and a hearing was held before a Special Inquiry Officer in which all the salient facts were admitted. On June 13, 1957, the appellee was ordered deported under Section 241(a) (4) of the Immigration and Nationality Act of 1952, 66 Stat. 204, 8 U.S.C. § 1251(a) (4). The order was founded upon the alien's conviction of the offense of open lewdness within five years of his entry. The appellee appealed this decision to the Board of Immigration Appeals, and on October 23, 1957, the appeal was dismissed. Subsequently, on November 25, 1957, the appellee filed a complaint in the district court seeking a declaratory judgment under 28 U.S.C. § 2201 that the order for his deportation was null and void, and for temporary and permanent injunctive relief against its enforce-ment. The district court set aside the deportation order. In its opinion [2] the district court concluded that appellee's reformatory sentence was not within the purview of Section 241(a) (4).

Section 241(a) (4) of the Immigration and Nationality Act of 1952, *supra,* provides for the deportation of any alien who

"is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more * * *." [3]

■ In deportation cases where a state crime is involved we have to look to the law and procedure of the state to interpret what happened in the state courts. Pino v. Nicolls, D.C.Mass.1954, 119 F. Supp. 122, affirmed 2 Cir., 1954, 215 F.2d 237, reversed on other grounds Pino v. Landon, 1955, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239; United States ex rel. Freislinger on Behalf of Kappel v. Smith, 7 Cir., 1930, 41 F.2d 707. Although the appellee was tried and convicted for the offense of open lewdness,[4] it is important to note that the sentence was imposed pursuant to the New Jersey Sex Offenders Act.[5]

2. D.C.N.J.1957, 157 F.Supp. 43.

3. This court has recently affirmed per curiam a district court decision which held that a suspended sentence was encompassed within Section 241(a) (4) of the Immigration and Nationality Act of 1952. United States ex rel. Fells v. Garfinkel, 3 Cir., 1958, 251 F.2d 846. However, we do not reach that problem in this case.

4. "Any person who commits open lewdness or a notorious act of public indecency, grossly scandalous and tending to debauch the morals and manners of the people, or in private commits an act of lewdness or carnal indecency with another, grossly scandalous and tending to debauch the morals and manners of the people is guilty of a misdemeanor." N.J.S.A. 2A:-115-1.

5. "Disposition of sex offenders upon request and recommendation of diagnostic center.
   "The disposition to be made by the court of such person, upon written report and recommendation of the diagnostic center, shall include 1 or more of the following measures:
   "a. The court may place such person on probation with the requirement, as a condition of said probation, that he receive out-patient psychiatric treatment in the manner to be prescribed in each individual case.
   "b. Such person may be committed to an institution to be designated by the commissioner of institutions and agencies for treatment, and upon release shall be subject to parole supervision.
   "In the event that the court shall order a commitment of the person as provided in this section, such order of com-

The most recent opinion of the New Jersey Supreme Court interpreting this relatively new and novel piece of legislation is State v. Wingler, 1957, 25 N.J. 161, 135 A.2d 468. The opinion is primarily directed to those provisions of the Act that authorize confinement. However, in commenting upon the constitutionality of the Act, the Court stated, 135 A.2d at page 476, that

> "They [sex offenders] are given special beneficial treatment designed to advance their interests as well as those of society."

In a dissenting opinion, that takes issue with the majority's interpretation of the confinement provisions of the Act, Judge Heher states the philosophy that underlies the Act.

> "We have no occasion now to consider whether there is a scientific and factual basis for the 'clinical finding' that this 'offender's conduct' was 'characterized' by a 'pattern of repetitive, compulsive behavior'; it suffices here to say that when the Diagnostic Center makes the statutory findings, it becomes the peremptory 'duty' of the court to 'submit the offender' to a 'program of specialized treatment for his mental and physical aberrations,' *a course of action in no sense penal, but rather regenerative* for his eventual social adjustment and integration, and meanwhile protective of society itself against such 'repetitive, compulsive behavior,' due to 'mental and physical aberrations.' *It is a sociolegal measure wholly devoid of the punitive, in essence preventative and reformative,* in keeping with the teachings of sociological and psycho-

logical experience. * * *" (135 A. 2d at page 480) (emphasis supplied)

\* \* \* \* \* \*

> "He was not 'sentenced' as a criminal, to expiate his crime in a penal institution, but rather was 'submitted', as a sexual psychopath, to a program of 'specialized treatment' for his 'mental and physical aberrations.'" (135 A.2d at page 482)

This analysis is borne out by the very terms utilized in the statute itself. Section 6 of the Act[6] speaks of the "disposition" to be made of the person when the prerequisite clinical findings are made by the diagnostic center. On the other hand, Section 9[7] directs the court to "impose sentence" on such person in the manner provided by law where findings warranting the application of Section 6 are not made by the diagnostic center.

Thus, it appears clear that this Act is directed primarily at rehabilitation and cure of persons found to require medical treatment. Its penal aspects are decidedly secondary. In the instant case the appellee had to be given a suspended sentence in order for the court to be able to enforce its probationary order that he undergo psychiatric treatment.

Is this sentence of the county court pursuant to the New Jersey Sex Offenders Act a sentence such as is comprehended within Section 241(a) (4) of the Immigration and Nationality Act of 1952? The government asserts that it is and cites numerous cases in its brief to sustain this contention. However, they appear inapposite to the problem considered herein inasmuch as none of them involve the New Jersey Sex Offenders Act or any similar rehabilitative legislation.

---

mitment shall not specify a minimum period of detention, but in no event shall the person be confined or subject to parole supervision for a period of time greater than that provided by law for the crime of which such person was convicted." N.J.S.A. 2A:164-6.

**6.** N.J.S.A. 2A:164-6, note 4 supra.

**7.** "If it shall appear from the report of such examination made of such person that the offender's conduct was not characterized by a pattern of repetitive, compulsive behavior and neither violence nor age disparity was indicated, as provided for in section 2A:164-5 of this title, the court shall impose sentence on such person in the manner provided by law." N.J.S.A. 2A:164-9.

Unless this court is to ignore the substance of the county court order and the essence of the legislation upon which it is predicated, it is clear that it must hold that the sentence in question is not within the purview of Section 241(a) (4) of the Immigration and Nationality Act of 1952. Although the sentence was penal in form, in substance it merely provided for a series of psychiatric treatments. The coercive effect of the suspended sentence was intended to insure the participation of the appellee in the out-patient medical care. The penal element in this legislation is so unquestionably secondary that the humanitarian nature of the Act should not be subverted by any formalistic interpretation of its provisions.

The Supreme Court of the United States has held in Barber v. Gonzales, 1954, 347 U.S. 637, 642, 74 S.Ct. 822, 825, 98 L.Ed. 1009, that

"Although not penal in character, deportation statutes as a practical matter may inflict 'the equivalent of banishment or exile,' Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433, and should be strictly construed."

A study of the legislative history of Section 241(a) (4) fails to indicate the intent of Congress as regards statutes of this nature. However, it is noted that the statute itself requires that, in addition to conviction of a crime involving moral turpitude, the act must be of such seriousness that the party is "sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more." The order in the instant case indicates an intention by the county court, within the authority granted it by the legislature, to treat this act by the appellee as one not requiring incarceration at all. The suspended sentence was merely a technical means of enforcing the probation order and therefore is not within the purview of Section 241(a) (4) of the Immigration and Nationality Act of 1952 authorizing deportation.

The judgment of the district court will be affirmed.