Edward Charles WOOD, Appellant,

v.

Richard C. HOY, District Director, Immigration and Naturalization Service, United States Department of Justice, Appellee.

No. 16124.

United States Court of Appeals Ninth Circuit.

April 30, 1959.

Hiram W. Kwan, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Arline Martin, Richard A. Lavine, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant, Edward Charles Wood, here appeals from a judgment of the United States District Court for the Southern District of California upholding a deportation order entered against him by the Immigration and Naturalization Service.

The District Court had jurisdiction under 5 U.S.C.A. § 1009 and 28 U.S.C. § 2201. Jurisdiction of this court rests on 28 U.S.C. § 1291 and § 1294(1).

At the hearing before the Immigration and Naturalization Service on August 19, 1957, Wood was found deportable under § 241(a) (4) of the Immigration and Nationality Act (8 U.S.C.A. § 1251(a) (4)).

§ 1251, in setting forth the classes of deportable aliens, provides as follows:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

*   *   *   *   *   *

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial;" *   *   *

After exhausting his administrative remedies, Wood filed his complaint in the District Court on December 9, 1957, seeking to set aside the deportation order.

At the time of filing his complaint, appellant was a 21-year old native and citizen of Canada and had resided continuously in the United States since January 13, 1954. On that date appellant had been admitted to the United States as an immigrant for permanent residence with his parents, brother and sister.

In July, 1957, appellant was convicted in the Superior Court of California of two counts of robbery of the first degree, West's Ann.Cal.Penal Code § 211. The facts surrounding these convictions, as disclosed in the meager record, are these: Count I, On July 13, 1956, appellant and three others robbed a liquor store and took from one Rosenburg $1,100; Count II, On July 16, 1956, appellant and the same three others robbed a drive-in theatre and took from one Charlotte $300.

The Information states that at the time of the commission of the above offenses the defendants (referring to all four participants) were armed with deadly weapons, to-wit, two .45 revolvers. Appellant was sentenced for the term prescribed by law, sentence was suspended, and appellant placed on probation for five years. A condition of probation was that Wood make restitution and spend six months in the county jail.

Appellant assigns two specifications of error on his appeal to this court:

1. That the District Court erred in entering judgment against the appellant upon his petition for review in that he was not "convicted" within the purview of § 1251(a) (4); and

2. That the District Court erred in that it was not established that the two crimes did not arise "out of a single scheme of criminal misconduct."

We deal with these two issues, in order, below.

■ Appellant contends that because his sentence was suspended and he was placed on probation, he should not be considered "convicted" as that word is used in § 1251(a) (4).

§ 1251(a) (4) subjects to deportation an alien "who * * * is convicted * * * regardless of whether confined therefor * * *."

It is clear that appellant's position finds no support in the statute itself. Appellant, however, relies on two cases: Pino v. Landon, 1955, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239, where the Supreme Court, in a per curiam opinion, reversed a deportation order with the remark that—

> "On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of § 241 of the Immigration and Nationality Act."

and Holzapfel v. Wyrsch, 3 Cir., 1958, 259 F.2d 890, 892, where a conviction under a New Jersey statute held to be "directed primarily at rehabilitation and cure of persons found to require medical treatment" was found not to render an alien deportable under § 1251 (a) (4).

Appellant's reliance on the above cases is misplaced. In Holzapfel, supra, the Third Circuit specifically distinguished that case from their earlier opinion (United States v. Garfinkel), which had passed on the very point urged by appellant here. In United States ex rel. Fells v. Garfinkel, D.C.Pa., 1957, 158 F.Supp. 524, affirmed, per curiam, Third Circuit, 1958, in 251 F.2d 846, it was held that a suspended sentence was encompassed within § 1251(a) (4).

Holzapfel, as that opinion makes clear, rests on the rehabilitative nature of the statute there involved.

Though Pino v. Landon, supra, casts some doubt on the meaning of "convicted" as used in § 241(a) (4) of the Act, it is clear that in the instant case any interpretation of that word that would result in holding Wood not "convicted" would render the 1952 change in the Immigration and Nationality Act nugatory.

The 1952 change in the Act defined a deportable alien in terms specifically not requiring the service of a sentence. If Congress had meant to restrict the applicability of the Act to only those aliens who are convicted and required to serve a sentence, it could have said so very easily. The predecessor statute (8 U.S.C. § 155) did require the serving of a sentence. Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433; Jordan v. De George, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886. The fact that this provision of the Act was deleted indicates that it is not a requirement.

In the instant case Wood was convicted, sentenced, sentence was suspended and he was placed on probation. Appellant argues that West's Ann.Cal.Penal Code, § 1203.1 grants continuing jurisdiction over the probationer, and thus that the conviction is not a final order within the Pino v. Landon case.

That § 1203.1 grants continuing jurisdiction over the probationer is true to the extent that any violation of parole may result in reimposition of the sentence.

§ 1203.4 of the West's Ann.California Penal Code provides for the release from all penalties and disabilities resulting from the crime for which a probationer was convicted. This section may be utilized by a probationer whose sentence was suspended and who satisfies the conditions of his probation. § 1203.4 further provides—

> "* * * that in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."

Thus, though the conviction is perhaps not "final" for all purposes, in any subsequent prosecution it may still be

pleaded as a prior conviction even after it has been expunged.

Because California courts retain some control over the final disposition of a probationer's criminal record, it does not follow that such control precludes a finding that the probationer was "convicted" by that court. In Arrellano-Flores v. Hoy, 9 Cir., 1958, 262 F.2d 667, this court recently answered the identical contention Wood makes in the instant case. Appellant there contended that because the California court, after a finding of guilt, suspended sentence and granted probation, he was not deportable under § 1251(a) (11) of the Immigration and Nationality Act. We held there, and we reaffirm here, that a conviction in California followed by a suspended sentence and placement on probation remains a "conviction" within the meaning of the Immigration and Nationality Act of 1952.

Pino v. Landon, supra, must be construed in the light of the fact as developed in the First Circuit's opinion (sub nom. Pino v. Nicolls) upholding the deportation order.[1] The per curiam Supreme Court opinion reversing that deportation order did not set forth any test to determine what "finality of conviction" is required by the relevant section of the Act. In our opinion, Pino v. Landon is inapposite to the instant case.

Appellant next contends that the two crimes of robbery committed on July 13 and July 16 arose out of a single scheme of criminal misconduct.

§ 1251(a) (4), as here pertinent, provides that an alien is deportable if "convicted of two crimes involving moral turpitude, *not arising out of a single scheme of criminal misconduct.*" [emphasis supplied]. This clause was added by the 1952 Act.

The Act does not define what is a "single scheme of criminal misconduct." Nor does the legislative history shed any

1. Pino v. Nicolls, 1 Cir., 1954, 215 F.2d 237: Habeas corpus proceeding by petitioner Pino, who had been ordered deported because of conviction for two crimes involving moral turpitude, 8 U.S. C.A. § 1251(a) (4). The principal question was whether the alien had been "*convicted*" of the second crime upon which the deportation order was based.

A complaint filed in the Third District Court of Eastern Middlesex, Mass., charged Pino with petty larceny (theft of twelve golf balls). The District Court, sitting without a jury, found Pino guilty. This Massachusetts court is apparently a court of limited jurisdiction, and appeals from its orders may be had to the Superior Court of Massachusetts. Pino twice initiated appeals, but in each instance withdrew the appeal. If he had persisted in his appeals, he would have been entitled to a trial *de novo* before a jury.

Though Pino had been sentenced by the District Court to serve one year in the "House of Correction," no such sentence was ever served. The final entry in the District Court read: "Sentence revoked. *On file.*" [Emphasis added.] This "on file" status, discussed in the opinion of . the First Circuit, does not result in a final disposition of the case.

"It has long been the practice in this Commonwealth for a court, with the consent of the defendant, after a verdict or plea of guilty in a criminal case, when for good cause it seems best not to impose sentence immediately, to place the case on file. This practice has been recognized by statute and approved by this court. The effect of it is fully stated in Commonwealth v. Dowdican's Bail, 115 Mass. 133. * * * The case then stands on the records of the court, and although usually no further proceedings are had in it, it may at any time be called up and sentence may be imposed, or some other final disposition may be made of it. But the case cannot properly be placed on file without the consent of the defendant. He has a right to have it finally disposed of, without unreasonable delay, so that he will not be liable for an indefinite period to be brought into the court and subjected to punishment. Although this practice formerly prevailed only in the higher courts, it was extended by statute to the police, district and municipal courts." Quoting from Marks v. Wentworth, 1908, 199 Mass. 44, 85 N.E. 81.

It was, apparently, this indeterminative disposition by a lower tribunal that prompted the Supreme Court's reversal of this on the basis of a lack of "finality."

light on what was the intent of Congress in drafting this provision.[2]

There are three relevant cases that apply the "not arising out of a single scheme of criminal misconduct" provision of § 1251(a) (4).

Fitzgerald ex rel. Miceli v. Landon, 1 Cir., 1956, 238 F.2d 864. Petitioner there had been convicted of (1) an indecent assault on a child; and (2) being "a lewd, wanton and lascivious person" during the three months "next preceding" the criminal assault set out in the first complaint. The First Circuit, after examining the elements of each, held that the two crimes were separate and did not arise out of a single scheme of criminal misconduct. There had been no showing that petitioner had sought and been denied an opportunity to present evidence to the District Court, nor did the District Court have the record of administrative proceedings before it. The Court said that from the meager record it had no reason to believe that petitioner was convicted of being lewd, wanton and lascivious solely on the basis of the one act of indecent assault charged against him in the first count.

Jeronimo v. Murff, D.C.N.Y.1957, 157 F.Supp. 808. Petitioner had been convicted of six counts of larceny. The first count charged conspiracy to defraud the City of New York by making false claims for labor and materials on public contracts. The period of time charged in the conspiracy count (March 1, 1947, to January 7, 1949) completely encompassed the periods of time charged in all other counts of the indictment. The four substantive counts relied upon by the government for deportation were correlated with overt acts pleaded in the conspiracy count. These counts were shown to cover the following periods of time: Second Count, from April 28, 1947 to October 8, 1948; Third Count, from January 27, 1948 to September 10, 1948; Fifth Count, from June 18, 1948 to De-

cember 13, 1948; Seventh Count, from October 15, 1948 to January 7, 1949. The substantive counts themselves related to fraudulent contracts and the bribing of a public official. The concluding paragraph of the indictment read:

"All of the acts and transactions alleged in each of the several counts in this indictment are connected together and constitute parts of a common scheme and plan."

The Board of Immigration Appeals found that the crimes did not arise out of a single scheme of criminal misconduct.

The Court held that the evidence in the record conclusively showed that the four larcenies upon which deportation was based arose out of a single continuing criminal enterprise. The petition to annul the order of deportation was granted.

Chanan Din Khan v. Barber, 9 Cir., 1958, 253 F.2d 547, 549. This court there reviewed a deportation order under the subject statute. Appellant had been convicted of two counts of willfully evading income taxes for the years 1947 and 1948. Appellant had filed two separate and fraudulent returns for those years. In answer to a contention that the returns "arose out of a single scheme of criminal misconduct," this court said:

"Fraudulent returns in two different years could, or could not, be one plan or scheme. But we have no facts to prove such a scheme. * * * In the absence of all evidence to the contrary, complete crimes committed on differing dates or in differing places are considered separate and different crimes, and support separate charges."

The deportation order was affirmed.

None of the above cases defines what constitutes "a single scheme of criminal misconduct." Though language in Fitz-

---

**2.** Senate Report No. 1137, House Report No. 1365, Conference Report No. 2096, United States Code Congressional and Administrative News, Vol. 2, 82nd Congress, Second Session, 1952, page 1653 et seq.

gerald ex rel. Miceli, supra,[3] might be said to imply that the proviso is to be interpreted as "crimes arising out of a single *act* of criminal misconduct," this is not what the statute says. The Board of Immigration Appeals also has applied the statute as if it read "single criminal act." [4]

We must take the language of the statute as we find it. It says "not arising out of a single scheme of criminal misconduct"; it does *not* say "not arising out of a single criminal *act.*" If such latter reading had been the intent of Congress they could have so declared.

■ If there is any doubt as to the interpretation of this provision, that doubt must be resolved in favor of the alien. In Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 68 S.Ct. 374, 376, 92 L.Ed. 433, the Supreme Court said:

"We resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment or exile, Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not

assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used."

■ It must also be remembered that where the deportation order is based on misconduct of the alien subsequent to lawful entry, the government bears the burden of proving that the alien is deportable. Werrmann v. Perkins, 7 Cir., 1935, 79 F.2d 467; Hughes v. Tropello, 3 Cir., 1924, 296 F. 306; Kwong Hai Chew v. Rogers, 1958, 103 U.S.App.D.C. 228, 257 F.2d 606; Tutrone v. Shaughnessy, D.C.N.Y.1958, 160 F.Supp. 433. One of the elements of the deportation section under which Wood is sought to be deported is that the two crimes of which he was convicted did not arise "out of a single scheme of criminal misconduct."

In the Chanan Din Khan case, supra, this court said, *"In the absence of all evidence to the contrary,"* [5] two complete crimes constitute two crimes not arising out of a single scheme of criminal misconduct.

In the *instant* case, there *was* evidence to the contrary. The only evidence introduced by the government was the information charging appellant and three others with two counts of robbery, one alleged to have occurred on the 13th and the other three days later, on the 16th

---

3. Fitzgerald ex rel. Miceli v. Landon, 1 Cir., 1956, 238 F.2d 864 at page 867:

"It is true that it was alleged in the petition herein, and not denied in the return, that at the administrative hearing before the Special Inquiry Officer there were introduced in evidence letters from the state trial judge and the Chief of Police 'both of whom agreed that the acts arose out of a single scheme of criminal misconduct.' That amounts to no more than an expression of opinion by the two state officials as to the meaning of a provision in a federal statute. The facts upon which that opinion of law is ventured are not set forth. Such expression of legal opinion is not binding on the federal authorities. For all we know, the state judge and the Chief of Police might have thought that, if Mi-

celi was guilty of repeated acts of indecent assault against young girls, in which he employed the same technique and pattern of conduct, the several separate offenses would arise 'out of a single scheme of criminal misconduct' within the meaning of § 241(a) (4). This of course would not be so."

4. Matter of A— —, 5 I&N Adm. Dec. 470 (BIA, 1953);
   Matter of D— —, 5 I&N Adm. Dec. 728 (BIA, 1954);
   Matter of Z—, 6 I&N Adm. Dec. 167 (BIA, 1954);
   Matter of J— —, 6 I&N Adm. Dec. 382 (BIA, 1954);
   Matter of P— —, 6 I&N Adm. Dec. 795 (BIA, 1955).

5. Italics added.

of July, 1956. Appellant, who was sworn as a witness, was then asked whether he was one of the persons named in the information and whether he had pleaded guilty to the two counts of robbery charged therein. Appellant answered yes to both questions. The government produced no further proof.

Appellant was then examined by his own counsel, as follows:

"Q. Mr. Wood, who was the person among the co-defendants who planned the particular robberies? A. Stanley Gene Sherman.

"Q. At the time you were first approached by him did he discuss and did you agree to participate in certain robberies? A. I did.

"Q. And referring specifically to the time when you first discussed it, were the robberies mentioned in counts 1 and 2, the liquor store and drive-in movies, those which were discussed? A. Yes.

\* \* \* \* \* \*

"Q. And this discussion that you have told us about here that you had with Stanley Gene Sherman; how long before either of these robberies occurred was that? A. About a period of two or three weeks.

"Q. And did you also tell what you have told us here to the probation officer? A. I explained to the probation officer exactly what happened and how it was stated to me, which he accepted, which is the same as it is here."

It was further shown that Stanley Gene Sherman was an ex-convict and that appellant was, at the time the robberies were planned, a minor approximately twenty years of age.

There was no cross examination by the government and no evidence was introduced by the government to rebut the testimony of appellant. At the conclusion of Wood's testimony, the Special Inquiry Officer asked the Examining Officer the following question:

"Q. Any cross-examination by the Government, Mr. Bartos? A. No, I don't think so. The informations speak for themselves."

The government treated the matter as if the words "not arising out of a single scheme of criminal misconduct" had not been added to the statute. The government could have cross-examined Wood or otherwise sought to impeach his testimony. This was not done. The Special Inquiry Officer could have refused to believe appellant and so found. No such finding appears in the record.

█ Section 1252(b) (4) provides that "No decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." It is just as much the burden of the government in order to establish deportability to establish that the two crimes in question did not arise out of a single scheme of criminal misconduct, as it is for the government to establish that the appellant was convicted of "two crimes." If it failed to prove either of these facts. appellant was not deportable under the statute.

█ It may be that in some cases the proof of the commission of two crimes may by the very nature of the crimes themselves, or the time or circumstances of their commission, be reasonable, substantial and probative evidence that they did not arise out of a single scheme of criminal misconduct. We do not say that that is not possible. However, that is not this case. In this case, both crimes were robbery of the first degree, both crimes were committed by the same four persons, in both crimes money was obtained from the victims by means of force and fear, and the two crimes were committed within three days of each other. The only sworn testimony in the record concerning this matter was that two or three weeks before the crimes were committed, the four defendants met and at the suggestion of one of them, the four agreed to participate in the two particular armed robberies which were later committed on July 13th and July

16th. No attempt was made by the government to weaken, modify or lessen the effect of this testimony. It was not in itself inherently improbable. There were no discrepancies or contradictions in the testimony.

The record before us does not disclose that the Special Inquiry Officer gave any consideration whatever to the testimony of appellant concerning the "single scheme." The oral decision of the Special Inquiry Officer indicates that that official acted as if the proof of two crimes involving moral turpitude in all cases was sufficient to establish deportability; no apparent consideration was given to the additional fact required by the statute to be proven, to-wit, "not arising out of a single scheme of criminal misconduct." This attitude of the Immigration and Naturalization Service is further manifested in the statement of the Examining Officer that "The informations speak for themselves," from his refusal to cross-examine appellant, and from the discussions of the Board of Immigration Appeals which we have examined. See footnote 4, supra.

This is an erroneous view of the law.

The Special Inquiry Officer conducts proceedings as authorized by 8 U.S.C.A.

§ 1252(b) to determine the deportability of an alien. He is authorized to "make determinations, including orders of deportation." § 1252(b) (4) further provides that "no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."

We can not discern, from the Inquiry Officer's findings, what, if any, consideration was given to the new clause added to the Act, or whether an erroneous view of the law was applied.[6]

Under these circumstances, we believe it proper for the case to be remanded so that proper findings on the proper view of the law may be made. Schaffer Transportation Co. v. United States, 1957, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed. 2d 117.

For the foregoing reasons, the judgment is reversed and the cause is remanded to the District Court with directions to set aside the Deportation Order and remand the cause to the Immigration and Naturalization Service for further proceedings not inconsistent with this opinion.

6. Morand Bros. Beverage Co. v. N.L.R.B., 7 Cir., 1953, 204 F.2d 529, at page 532:
"Before considering the question of the substantiality of the evidence in support of the Board's findings of fact, which is, of course, the only question properly presented at this stage of these proceedings, we think it not unwise to recall a basic tenet in our federal system of administrative practice and review. The position of any administrative tribunal whose hearings, findings, conclusions and orders are subject to direct judicial review, is much akin to that of a United States District Court. * * * That is to say, it is the 'inferior' tribunal, whose decisions, both substantive and, in some instances, adjective, are subject to review and consequent approval or disapproval by the reviewing body. The full implication of this relationship is realized when, as here, the occasion arises for the reviewing court to state what it believes to be the substantive law applicable to a particular controversy but finds that the lower tribunal has not conclusively found the facts to which this law should be applied. The result then, in view of the rule that a reviewing court shall not enter initial findings of fact, is an order remanding the cause 'for further proceedings in conformity with the decision of this court.' "