MATTER OF G—

In DEPORTATION Proceedings

A-10028465

*Decided by Board September 7, 1960*

*Approved by Attorney General January 17, 1961*

**Deportability—Section 241(a)(4), 1952 act—Convicted within five years of entry—Effect of California expungement law.**

An alien whose conviction by a California court is later expunged under section 1203.4 of the California Penal Code has not been "convicted" of a crime for the purposes of section 241(a)(4) of the Immigration and Nationality Act. (Cf. *Matter of A—F—,* 8—429.)

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime committed within five years after entry, to wit: Forgery of fictitious name (sec. 470, Penal Code of California).

BEFORE THE BOARD
(September 7, 1960)

**DISCUSSION:** The special inquiry officer terminated proceedings and certified the case to this Board for final decision. No change will be made in his decision.

Respondent, a single male about 22 years of age, a native and national of Germany, was admitted to the United States for permanent residence in 1955. On June 12, 1959, he committed forgery. He was convicted on July 12, 1959, in a California court. Sentence was to confinement in the county jail for one year, but execution was suspended and respondent was placed on probation. On December 15, 1959, the same court set aside the plea of guilty and dismissed the case pursuant to section 1203.4 of the Penal Code of California. The special inquiry officer, relying upon precedents holding that such an expungement of the record prevents the use of the "conviction" as a basis for deportation, terminated proceedings. The Service representative has filed a brief asking that deportation be ordered because the expungement does not eliminate the "conviction" as a ground of deportation. Counsel for respondent asks that the order of the special inquiry officer be affirmed.

159

Expungement of the conviction occurred under section 1203.4 of the Penal Code of California which provides:

Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, shall at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and in either case the court shall thereupon dismiss the accusations or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted. The probationer shall be informed of this right and privilege in his probation papers. The probationer may make such application and change of plea in person or by attorney, or by the probation officer authorized in writing; *Provided*, That in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.

A review of decisions concerning expungement reveals some conflict as to its effect, but the latest cases reaffirm the rule that the expungement wipes out the criminal proceedings and places the defendant in a position which he would have occupied if no accusation or information had been presented against him (*People* v. *Taylor*, 3 Cal. Rptr. 186 (1960); *Stephen* v. *Toomey*, 338 P.2d 182 (1959); *Kelly* v. *Municipal Court*, 324 P.2d 990 (1958)). There are exceptions to the rule. Despite the expungement, the State of California recognizes the existence of a conviction in a subsequent prosecution, in impeachment of the defendant, and in the regulation of privileges concerning drivers of motor vehicles, attorneys-at-law, doctors, and public school teachers (*People* v. *Taylor, supra*). An expungement may be obtained only by a person who has been placed on probation, a matter wholly within the discretion of the court (*People* v. *Walker*, 5 Cal. Rptr. 283; *People* v. *Judson*, 18 P.2d 379). The court may not give probation to a person guilty of the more serious crimes (California Penal Code, section 1203). The expungement must be applied for and the petitioner must establish that he has complied with the conditions of his probation. In some respects the expungement carries with it greater rights than does an executive pardon (*People* v. *Taylor, supra*, pp. 190–191).

While the Federal courts considered the issue before the State made exceptions to the rule that an expungement eliminates the existence of a conviction, the Federal cases were decided when the law provided, as it does today, that the expungement does not eliminate the existence of the conviction in a subsequent prosecution. *In re Paoli*, 49 F. Supp. 128, 130 (N.D. Cal., 1943), reveals that after an expungement there was technically "no formal records remaining of a conviction." Another court stated that the record of arrest, the conviction, and the probation are wiped out leaving no proof of

delinquency (*In re Ringnalda*, 48 F. Supp. 975, 978 (S.D. Cal., 1943). Judge Yankwich, then, as now, United States District Judge, Southern District of California, in an article on the Federal penal system stated that the expungement proceeding enables the convicted person "to claim truthfully that he *has never* been convicted of a felony" ("The Federal Penal System," 10 F.R.D. 539, 554–555).

Prior to the decision of the Attorney General in *Matter of A—F—*, 8—429, the Board consistently held (with the knowledge of the Attorney General, *Matter of H—*, 6—619, 622 (1955)) that a conviction which had been expunged could not be made the basis for deportation proceedings because there was no longer a record of conviction (*Matter of O—T—*, 4—265; *Matter of E—V—*, 5—194; *Matter of A—F—*, *supra*). However, in *Matter of A—F—*, the Attorney General held that when a narcotic violation is concerned (section 241(a) (11), Immigration and Nationality Act) a conviction which had been expunged would nevertheless support an order of deportation. The decision of the Attorney General was based in part on the actions of Congress showing a policy of severity to alien narcotic offenders. Stress was placed on the effect of an amendment to section 241(b) of the 1952 Act (8 U.S.C. 1251(b)) which originally provided that a judicial recommendation against deportation or an executive pardon would relieve an alien from liability to deportation under either section 241(a)(4) of the Act (8 U.S.C. 1251(a)(4)) because of conviction of crime involving moral turpitude, or section 241(a) (11) of the Act (8 U.S.C. 1251(a)(11)) because of conviction of a narcotic violation. We shall therefore briefly consider section 241(b) of the Act, and its predecessor, section 19 of the Immigration Act of February 5, 1917.

Prior to the Immigration and Nationality Act, a judicial recommendation against deportation or a pardon (whether legislative or executive) barred deportation proceedings based on the conviction of crime (section 19, Act of February 5, 1917). No distinction was made between narcotic and nonnarcotic violations. Section 241(b) of the Immigration and Nationality Act eliminated the legislative pardon as a bar to deportation proceedings (*Matter of R—*, 5—612). In 1956, an amendment to section 241(b) provided that a judicial recommendation against deportation or an executive pardon should not apply to an alien convicted of a narcotic offense (Act of July 18, 1956).

It was our belief that neither the 1952 change nor the one made in 1956 prevented an expungement from being given effect. The issue in a narcotic case was referred to the Attorney General, who, in *Matter of A—F—*, *supra*, ruled that in a narcotic case a convic-

161

tion exists for deportation purposes even though the record of conviction has been expunged under the state law. The Attorney General's order pointed out that Congress had shown a policy of progressively greater severity in the treatment of the narcotic violator culminating in the refusal to give the narcotic violator the same freedom from liability to deportation which the nonnarcotic violator obtained through an executive pardon. He held, therefore, that it would be illogical to permit an expungement, which is less than an executive pardon, to defeat deportation proceedings. The holding was expressly confined to a charge under section 241(a)(11) of the Act relating to narcotic violations, and the Attorney General refrained from passing on the effect of an expungement where the conviction formed the basis for a deportation proceeding under section 241(a)(4) of the Act relating to conviction for a crime involving moral turpitude.

*Matter of A—F—, supra,* holds that a conviction under section 241(a)(11) of the Act exists although the state has expunged the conviction. *Matter of A—F—* can be interpreted as calling for the same rule where deportation is sought under section 241(a)(4) of the Act for conviction of a crime involving moral turpitude. The argument would run so. Just as Congress in narcotic cases revealed a policy of severity, so with regard to convicted aliens generally Congress revealed a policy of severity—grounds for deportation of criminal aliens were made broader, retroactive, and the requirements that a convicted alien had to serve a prison sentence and that convictions could not be in one trial were eliminated (H.R. No. 1356, Feb. 14, 1952, 82d Cong., 2d Sess., U.S. Code Congressional and Administrative News, 1952, Vol. 2, p. 1679; Commentary, p. 61, 8 U.S.C.A.; *Lehmann* v. *United States ex rel. Carson,* 353 U.S. 685). Moreover, just as in narcotic cases a judicial recommendation against deportation or a pardon was made ineffective in preventing deportation, so in all criminal cases a legislative pardon was made ineffective (*Matter of R—,* 5—612).[1] The importance of the last limitation is apparent if an expungement is viewed in the nature of a legislative pardon. Thus, the situation presented would seem to be very similar to that found in *Matter of A—F—, supra* which could be the basis for holding that an erasure of a conviction by other than the executive power and other than on the merits does not relieve an alien from liability to deportation in nonnarcotic cases.

In fact, this is the view the Service representative asks us to adopt, it is the one which he emphasizes was advanced by the So-

---

[1] We assume that Congressional rejection of the legislative pardon was based on its automatic application to one who had served his sentence irrespective of the merits of the case. The record is silent on the reason for the change.

licitor General in arguing *Arrellano-Flores* v. *Hoy* (262 F.2d 667, cert. den. 362 U.S. 921 (1960)) before the Supreme Court, and the Service representative has supplied us with a copy of the Solicitor General's brief which contains support for the view (Sol. Gen. brief, pp. 7-8).[2] While a case may be made for concluding that a non-narcotic violation is not affected by an expungement of the record for immigration purposes, we feel that adherence to the contrary view is indicated for the reasons which follow:

(1) The contrary rule has been in effect since at least 1943 (*Matter of A—F*, *supra*, p. 6).

(2) There has been no Congressional criticism of this rule.

(3) The reasoning in *Matter of A—F—*, *supra*, is most pertinent if an expungement is considered as a legislative pardon. For then, just as Congress indicated that a pardon would not suffice in a narcotic case, it indicated that a legislative pardon would not suffice in any criminal case and it would follow that an expungement should not be recognized. Here it is pertinent to note that Congress apparently does not consider an expungement as a legislative pardon for it made no effort to class an expungement as a legislative pardon after administrative decisions held that an expungement eliminated a conviction under the Immigration and Nationality Act (*Matter of E—V—*, 5—194 (1953)). This lack of action is especially significant since Congress corrected other administrative rulings which brought about results it did not desire. Moreover, an expungement is not a legislative pardon. The feature of legislative pardon with which we have dealt in immigration matters has been its indiscriminate and automatic application as an administrative function to any person who had served his prison term. An expungement (considered in the nature of a pardon for the purpose of the comparison) is not available to one who has served a prison term. It is a judicial act. While it must be given to one who satisfactorily completed probation, the granting of probation is a *discretionary matter*. The expungement must be applied for. It does not automatically attach to

---

[2] The Service representative, in further support of his belief that the immigration proceedings are not affected by an expungement even in a nonnarcotic case, cites *Arrellano-Flores* v. *Hoy*, 262 F.2d 667 (C.A. 9), cert. den. 362 U.S. 921 (1960), and *Wood* v. *Hoy*, 266 F.2d 825 (C.A. 9, 1959). He is of the belief that these cases considered together establish that a "federal standard" exists which requires that the state expungement proceedings be given no effect in deportation proceedings. We cannot consider these cases as the basis for such a far-reaching rule. *Neither case involved an expungement.* They were concerned with the issue as to whether a suspended sentence is a "conviction."

one who has served his probation. We have pointed out the expungement carries in some respects even greater benefits than an executive pardon. The disabilities which exist after an expungement are no more significant than those which exist after an executive pardon is granted (see *People* v. *Biggs*, 71 P.2d 214).

(4) For purposes of the record, the State of California has wiped out the entire proceeding. There is now no conviction (*Pino* v. *Landon*, 349 U.S. 901).

(5) The Attorney General in *Matter of A—F—*, *supra*, restricted his ruling to an expungement of a narcotic violation where deportation proceedings were based on section 241(a)(11) of the Act, and the Solicitor General in arguing the case before the Supreme Court stated that the Congressional policy as to narcotic offenses is different from that relating to other offenses so that very different considerations were involved than were found in other criminal convictions (p. 7 of the Sol. Gen. brief). If we were to apply the exception of the narcotic rule to the instant proceeding, there would be nothing for the narcotic cases to be exceptional to.

(6) Matters of doubt should be resolved in favor of the alien in deportation proceedings (*Fong Haw Tan* v. *Phelan*, 333 U.S. 6).

(7) While section 241(a)(4) of the Immigration and Nationality Act must be interpreted in light of the attitude of strictness shown by Congress when it was written, it is not amiss to refer to the fact that Congress has progressively alleviated the rigor of the laws relating to convicted aliens so that an alien who has been convicted of a petty offense may enter as a matter of right (section 4, Act of September 3, 1954, 8 U.S.C.A. 1182a), and an alien convicted of more serious offenses may be permitted to enter as a matter of discretion (section 5, Act of September 11, 1957, 8 U.S.C.A. 1182b).

We conclude that an expungement of the record in California eliminates the "conviction" as a basis for deportation proceedings based on section 241(a)(4) of the Immigration and Nationality Act. In view of the arguments made concerning *Matter of A—F—*, *supra*, and in view of the brief of the Solicitor General, we shall certify this case to the Attorney General for review so that there shall be but one controlling administrative view.

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.

164

*It is further ordered* that this case be referred to the Attorney General for review under 8 CFR 3.1(h)(1)(ii).

### BEFORE THE ATTORNEY GENERAL
(January 17, 1961)

This deportation matter is before me pursuant to a referral under 8 CFR 3.1(h)(1)(ii) for a review of the order of the Board of Immigration Appeals dated September 7, 1960, by which it adopted a special inquiry officer's order terminating the proceedings against the respondent.

The respondent, an alien who entered the United States in 1955, pleaded guilty in a California court to a charge of forgery of fictitious name committed June 12, 1959. The court sentenced him on July 29, 1959, to a term of one year in county jail but simultaneously suspended the sentence except as to 150 days thereof and placed him on probation for three years.

On August 25, 1959, a special inquiry officer ordered respondent deported under the provisions of section 241(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(4)) on the ground that he had been convicted of a crime involving moral turpitude committed within five years after entry into the United States and sentenced to confinement in a prison or corrective institution for a year or more. Respondent's appeal was dismissed by the Board of Immigration Appeals.

Following his release from county jail, respondent moved the court which had sentenced him for an expungement of his conviction under section 1203.4 of the Penal Code of California. His motion was granted, as reflected by the following minute of the court:

On defendant's motion, defendant's plea of "Guilty" is vacated and set aside and a plea of "Not Guilty" is entered. Probation is terminated and the case dismissed, pursuant to section 1203.4, Penal Code.

Respondent thereupon applied to the Board of Immigration Appeals for a reconsideration of its decision approving his deportation. The Board reopened and remanded the proceedings to the special inquiry officer. The subsequent order of the Board approving termination of the proceedings is the one before me now.

Section 1203.4 of the California Penal Code provides that a defendant who has fulfilled the conditions of probation or who has been discharged from probation prior to the termination of its stated period shall be permitted by the court:

* * * to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and in either case the court shall thereupon dismiss the

accusations or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted. The probationer shall be informed of this right and privilege in his probation papers. The probationer may make such application and change of plea in person or by attorney, or by the probation officer authorized in writing; *Provided,* That in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.

The issue to be decided here is whether an alien who has sustained a conviction which is later expunged under this statute is an "alien . . . who . . . is *convicted* of a crime . . ." for the purposes of section 241(a)(4) of the Immigration and Nationality Act (emphasis added).

California has enacted legislation to prevent the operation of this statute in a few specified situations in addition to the one affected by its proviso. As a result of this legislation, some of which overruled and some of which codified judicial decisions, an order of release under the provisions of section 1203.4 will not prevent revocation of a driver's license (section 13555, formerly 309, Vehicle Code) or disciplinary action against members of the bar (section 6102, Business & Professions Code), physicians (sections 2383 and 2384, Business & Professions Code) and public school teachers (section 12911, formerly 12011.5, Education Code). *Cf. People v. Mackey,* 58 Cal. App. 123, 208 P. 135 (1922); *Sherry v. Ingels,* 34 Cal. App.2d 632, 94 P.2d 77 (1939); *In re Phillips,* 17 Cal.2d 55, 109 P.2d 344 (1941); *Meyer v. Board of Medical Examiners,* 34 Cal.2d 62, 206 P.2d 1085 (1949). In general, however, an expungement under section 1203.4 renders a conviction of no force and releases the offender from penalties and disabilities to which he would otherwise be subject. *Stephens v. Toomey,* 51 Cal.2d 864, 338 P.2d 182 (1959), offender restored to voting rights; *Kelly v. Municipal Court,* 160 Cal. App.2d 38, 324 P.2d 980 (1958), sex offender relieved from requirements of registration statute; *People v. Banks,* 53 Cal.2d 370, 388, 1 Cal. Rep. 669, 681 (1959), and *People v. Taylor,* 178 A.C.A. 482, 3 Cal. Rep. 186 (1960), offender relieved from prohibition against possession of firearms. In other words, insofar as the law of California is concerned, the expungement statute is generally effective to return a defendant to a status the same as though he had not been convicted.

For some fifteen years the Board of Immigration Appeals has consistently held that a conviction expunged under the California statute does not afford the basis for deportation under either section 241(a)(4) of the Immigration and Nationality Act or section 241(a)(11), relating to the expulsion of aliens convicted of nar-

cotics violations. *Matter of O—T—*, 4—265 (1951); *Matter of D—*, 7—670 (1958); *Matter of A—F—*, 8—429 (1959); see also *Matter of H—*, 6—619 (1955), and *Matter of E—V—*, 5—194 (1953). However, in *Matter of A—F—*, *supra*, I ruled that expungement in narcotics cases has no effect in deportation proceedings brought under section 241(a)(11) and disagreed with the Board's position that in such proceedings "there is no conviction whatever to support an order of deportation."[1] I specifically limited my disagreement to cases under section 241(a)(11) and did not rule on the issue presented here under section 241(a)(4) with respect to nonnarcotics offenses.

My ruling in *Matter of A—F—*, *supra*, was grounded on the history of section 241(a)(11) and section 241(b), which is concerned with pardons and judicial recommendations against deportation. These histories disclose that Congress has progressively and substantially strengthened the deportation laws dealing with aliens involved in narcotics traffic. Accordingly, I concluded that there is a clear national policy militating against the abridgement of the term "convicted" in the cases of aliens who are able to obtain expungement of narcotics convictions under state law.

Although section 241(a)(4) is today a somewhat more severe statute than its earlier counterpart, it remains substantially less severe than section 241(a)(11), especially when viewed in conjunction with section 241(b). Furthermore, and perhaps of more significance, it is not the end product of a history pointing to a stringent national policy of the nature referred to in my decision in *Matter of A—F—*. Consequently, a decision in the instant case similar to that decision cannot be based simply upon the authority of the latter.

The Immigration and Naturalization Service points out that my decision in *Matter of A—F—* applies a "federal standard" and suggests that when considered with *Arrellano-Flores* v. *Hoy*, 262 F.2d 667 (C.A. 9, 1958), cert. den. 362 U.S. 921, and *Wood* v. *Hoy*, 266 F.2d 825 (C.A. 9, 1959), the decision is applicable to cases arising under section 241(a)(4). *Arrellano-Flores* v. *Hoy* was an action by the respondent in *Matter of A—F—* challenging the order of deportation issued against him under section 241(a)(11) on the ground that a suspension of sentence and grant of probation meant he had not been "convicted." The court disagreed:

Appellant relies heavily on *United States ex rel. Freislinger, on Behalf of Kappel* v. *Smith*, 7 Cir., 41 F.2d 707. The Seventh Circuit held that whether

---

[1] Although the respondent A—F— was on probation pursuant to a suspended sentence, his conviction on a narcotic charge had not been set aside under section 1203.4 of the Penal Code. For reasons which appear in my decision in *Matter of A—F—*, I nevertheless considered the question raised by an alien's use of that section to resist deportation for violating the narcotics laws.

a man had been "convicted" in state court was to be determined by the law of the state where the offense was committed and proceedings had. It was of the opinion that under Illinois law Freislinger had not been convicted because a final judgment of conviction had not been entered.

While one cannot close one's eyes to the state's statutes and what transpired in the state's proceedings, we are inclined to the belief that perhaps here Congress intended to do its own defining rather than leave·the matter to the variable state statutes. Credence for this view can be found in the fact the present statute reads "convicted" while its predecessor, 46 Stat. 1171 (Chap. 224), read "convicted and sentenced." It would appear that federal courts have generally taken the view that a plea of guilty or a finding of guilty, which is in repose and remains undisturbed, amounts to a conviction. See *Kercheval* v. *United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009.[2]

In *Wood* v. *Hoy*, *supra*, which was concerned with a challenge to a deportation order issued under the authority of section 241(a)(4), the court broadened its decision in the earlier case to encompass that section, stating (266 F.2d 825, 828) :

We held there (*Arrellano-Flores* v. *Hoy*) and we reaffirm here, that a conviction in California followed by a suspended sentence·and placement on probation remains a "conviction" within the meaning of the Immigration and Nationality Act of 1952.

As appears from this statement, section 1203.4 of the California Penal Code had not been brought into play in either case. The two cases are therefore not helpful in assessing the consequences of expungement whether in proceedings under section 241(a)(4) or section 241(a)(11).

Thus I am unable to agree that the *Arrellano-Flores* and *Wood* decisions serve to extend my ruling in *Matter of A—F—* beyond the precise boundary which I marked out for it—i.e., beyond the limits of section 241(a)(11).

*Pino* v. *Landon*, 349 U.S. 901 (1955), has a bearing on the issue presented here. In that case, as revealed by the lower court opinions *sub nom Pino* v. *Nicolls*, 119 F. Supp. 122 (D.C. Mass.), and 215 F.2d 237 (C.A. 1), an alien who had been ordered deported under section 241(a)(4) because of convictions for two crimes argued that he had not been "convicted" of the second. He had been tried, found guilty and sentenced to one year in prison on a charge of petty larceny in the second proceeding, but the judge had suspended the sentence and entered an order putting him on probation for a period of one year. At the end of the period the court revoked the sentence and, under a unique Massachusetts practice requiring the consent of the defendant, placed the case "on

[2] The court prefaced this language by the erroneous statement that under California law the sentence received by the defendant did not constitute a final judgment from which an appeal could be taken. In fact, a 1951 amendment to section 1237 of the California Penal Code had specifically provided that an order granting probation "shall be deemed to be a final judgment" for the purposes of appeal.

168

file." An "on file" case stands on the records of the court and although usually no further action is taken, the case may at any time be called up and sentence imposed, or some other final disposition may be made.

In accordance with *United States ex rel. Freislinger on Behalf of Kappel* v. *Smith, supra,* the Court of Appeals examined the Massachusetts precedents dealing with the meaning of the word "convicted." It found that the Massachusetts courts had never been called upon to interpret it in the context of a deportation case and concluded that such meaning, in the interest of a uniform application of the federal statutes, is a "federal question to be determined upon due consideration of the policy which section 241(a) (4) was designed to serve." The court went on to hold that on the record the alien stood convicted within the purview of that section. The Supreme Court disagreed, rendering the following per curiam opinion:

On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of section 241 of the Immigration and Nationality Act. The judgment is reversed.

Cryptic as this cursory decision may be, it almost certainly evidences rejection of the Court of Appeals' view that the construction of section 241(a)(4) is purely a "federal question" to be determined in terms of the policy behind its enactment and without regard to state law and procedure. But whatever it was that led to the Supreme Court's decision in the case, it is pertinent to observe that the Massachusetts procedure, although revoking the sentence, leaves the plea or finding of guilt undisturbed while the California procedure, by setting aside the plea or finding of guilt, moves a conviction even farther away from an area of finality. *Pino* v. *Landon* would seem, therefore, to make it an *a fortiori* conclusion in a nonnarcotics case that an expungement of an alien's conviction under section 1203.4 of the California Penal Code withdraws the support of that conviction from a deportation order under section 241(a)(4) and brings it to the ground. *Cf. Matter of L—R—,* 7—318 (1957).

Since what judicial precedent there is points to the validity of the long-standing rule of the Board of Immigration Appeals which it invoked in the instant matter and since there is no Congressional signpost pointing in the opposite direction, I find no reason to reverse the rule. Accordingly, the Board's order herein dated September 7, 1960 is approved.