# In re Ismael YANEZ-Garcia, Respondent

File A91 334 042 - Chicago

*Decided May 13, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The determination whether a state drug offense constitutes a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) (2000), such that it may be considered an "aggravated felony" under section 101(a)(43)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B) (2000), shall be made by reference to decisional authority from the federal circuit courts of appeals, and not by reference to any separate legal standard adopted by the Board of Immigration Appeals. *Matter of K-V-D-*, Interim Decision 3422 (BIA 1999), overruled. *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995), and *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), modified.

FOR RESPONDENT: Carol A. Waldman, Esquire, Chicago, Illinois

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Amy C. Hoogasian, Assistant District Counsel

BEFORE:   Board En Banc:  SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, GUENDELSBERGER, GRANT, MOSCATO, MILLER, BRENNAN, OSUNA, OHLSON, HESS, and PAULEY, Board Members.  Concurring and Dissenting Opinion: ROSENBERG and ESPENOZA, Board Members.

FILPPU, Board Member:

In a decision dated March 14, 2000, an Immigration Judge sustained the charges of removability against the respondent, denied his requests for relief from removal, and directed that he be removed to Mexico.  The respondent has appealed from that decision, arguing that the Immigration Judge erred as a matter of law in finding him removable as an alien convicted of an aggravated felony on the basis of his two state convictions for drug possession, and requesting that the record be remanded so that he may apply for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (2000).

We will dismiss the respondent's appeal.[1]  Moreover, we have reexamined our precedent decision in *Matter of K-V-D-*, Interim Decision 3422 (BIA

---

[1]  The respondent's request for oral argument is denied pursuant to 8 C.F.R. § 3.1(e) (2001), and his request for a waiver of the appeal fee is granted pursuant to 8 C.F.R. § 3.8(c) (2001).

1999), where we held that state drug offenses may be considered aggravated felonies for immigration law purposes only if they are "analogous" to offenses punishable as felonies under the federal drug laws.  As explained below, we now withdraw from *Matter of K-V-D-*, *supra*, as well as from those portions of *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995), and *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), that are inconsistent with our present decision.

A number of federal circuit courts of appeals have developed standards for answering the question whether a state felony drug conviction constitutes an aggravated felony under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2000).  We will now follow those standards in immigration cases arising within those circuits.  Further, for reasons stated below, in immigration cases arising within circuits that have not yet had occasion to consider this question, we will apply the standards adopted by the majority of the circuit courts.

## I.  BACKGROUND

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States.  The record reflects that he has been convicted twice in the Circuit Court of Cook County, Illinois, of the offense of possession of cocaine in violation of chapter 720, section 570/402(c) of the Illinois Compiled Statutes:  (1) on January 5, 1998, for which he was fined and sentenced to 1 year of probation; and (2) on May 27, 1999, for which he was sentenced to 90 days of incarceration and 18 months of probation.  His offenses are classified as "class 4 felonies" under Illinois law, and are therefore punishable by a term of imprisonment of between 1 and 3 years.  *See* 730 Ill. Comp. Stat. Ann. 5/5-8-1(a)(7) (West 1999).  On the basis of these convictions, the Immigration and Naturalization Service charged the respondent with removability as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000), and as an alien convicted of an offense relating to a controlled substance under section 237(a)(2)(B)(i) of the Act. The Immigration Judge sustained both charges, and this timely appeal followed.[2]

The respondent raises a variety of arguments on appeal.  Two of these arguments challenge the conclusion that his Illinois offenses are analogous to an offense punishable as a felony under federal drug laws, as required by *Matter of K-V-D-*, *supra*.  The respondent correctly notes that his state convictions, which were for simple possession of cocaine, can only be analogous to a federal felony if his first conviction was "final" when his

_____

[2] The respondent does not challenge the Immigration Judge's conclusion that he has been convicted of a controlled substance violation for which he is removable as charged under section 237(a)(2)(B)(i) of the Act.

second possession offense occurred. *See* 21 U.S.C. § 844(a)(1) (2000). Consequently, he argues that his first conviction for cocaine possession—which resulted in a deferral of judgment and a sentence of probation under the Illinois first offender statute—was not "final" when he committed his second offense, and that the two convictions, taken together, are therefore not analogous to felony possession, which is punishable under 21 U.S.C. § 844(a)(1). Alternatively, the respondent contends that, even if his first conviction was final at the time of his second offense, that second offense is not truly analogous to a federal felony because he never received an "enhancement information" from a federal prosecutor, *see* 21 U.S.C. § 851(a)(1) (2000), as required for the imposition of enhanced punishment, based on prior convictions, under 21 U.S.C. § 844(a)(1).

The respondent's appeal raises substantial legal questions and illustrates some of the difficulties that can arise when applying the analytical approach that we adopted in *Matter of K-V-D-*, *supra*. Specifically, when determining whether a state drug conviction is analogous to a federal felony conviction, we are confronted with the fact that any hypothetical federal prosecution would have been governed by procedural and sentencing requirements entirely different from those that were, in fact, employed by the convicting state. To resolve this dilemma, we would therefore need to develop a standard for determining whether state finality rules, which may themselves be ambiguous, are analogous to the finality rules governing felony drug prosecutions under federal law. Furthermore, we would need a standard to determine whether the mandatory procedural requirements governing such federal prosecutions are analogous to those that applied in the convicting state.[3]

Completely apart from these analytical difficulties, moreover, is the fact that *Matter of K-V-D-* interprets 18 U.S.C. § 924(c)(2) (1994)—the federal criminal statute incorporated into the aggravated felony definition by section 101(a)(43)(B) of the Act—in a manner that has not generally been followed by the federal criminal law courts. Indeed, in one criminal case, a circuit court explicitly rejected the legal rationale underlying *Matter of K-V-D-*. *See United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir.) (disagreeing with the Board's interpretation of § 924(c)(2) and rejecting the notion that § 924(c)(2) may be interpreted differently in immigration and criminal cases), *cert. denied*, 122 S. Ct. 305 (2001). In response to *Hernandez-Avalos*, we

---

[3] In addition to these analytical problems, some courts have expressed concern that the hypothetical approach adopted in *Matter of K-V-D-* could, under certain circumstances, result in unduly harsh consequences for persons convicted of misdemeanors under state law. *Gerbier v. Holmes*, 280 F.3d 297, 311 n.12 (3d Cir. 2002); *Steele v. Blackman*, 236 F.3d 130, 137 (3d Cir. 2001).

issued a decision withdrawing from *Matter of K-V-D-* in cases arising within the Fifth Circuit. *See Matter of Salazar*, 23 I&N Dec. 223, 235 (BIA 2002).

## II.  ISSUE

The analytical difficulties inherent in the hypothetical felony approach, the broad adoption of a different approach by a substantial number of federal circuit courts, and the outright rejection of *Matter of K-V-D-* by one circuit all lead us to reexamine the question whether state drug convictions classified as felonies under applicable state law, but not necessarily under federal law, constitute "drug trafficking crimes" under 18 U.S.C. § 924(c)(2), such that they may be considered aggravated felonies under section 101(a)(43)(B) of the Act.

## III.  LEGAL DISCUSSION

### A.  Relevant Statutory Authority

Section 101(a)(43) of the Act defines the categories of offenses that merit treatment as "aggravated felonies" under the immigration laws and provides that the phrase "aggravated felony" "applies to an offense described in this paragraph, whether in violation of Federal or State law." Included in the "aggravated felony" definition is

> illicit trafficking in a controlled substance (as described in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in § 924(c) of title 18, United States Code).

Section 101(a)(43)(B) of the Act.[4]   The term "drug trafficking crime" referenced in this portion of the aggravated felony definition is, in turn, defined as follows:

> [T]he term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.).

18 U.S.C. § 924(c)(2).

The Controlled Substances Act ("CSA") defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13) (2000). This definition also applies to the Controlled Substances Import and Export Act and the Maritime Drug Law

---

[4]  The convictions at issue in this case do not fall clearly within the phrase "illicit trafficking," and we therefore look to whether the convictions fall within the meaning of the phrase "drug trafficking crime." *See generally Matter of Davis*, *supra*, at 540-41.

Enforcement Act.  *See* 21 U.S.C. § 951(b) (2000); 46 U.S.C. App. § 1903(i) (2000).

## B.   Relevant Case Law

The federal circuit courts of appeals and this Board agree that a state drug offense constitutes a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) if it is (1) punishable under one of the three enumerated federal drug statutes and (2) a "felony."  The first requirement is consistent with our decision in *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990), where we held that a state drug offense may be considered an aggravated felony only if it is analogous to an offense, such as possession, sale, or distribution of a controlled substance, that would be punishable under one of the three acts referenced in § 924(c)(2).  To date, no circuit court of appeals has expressed disagreement with this conclusion.

The issue in this case turns on the second requirement identified above, i.e., whether the state offense is a "felony."  As previously noted, this is a question that we have addressed and attempted to resolve on several previous occasions.  Most recently, in *Matter of K-V-D-*, *supra*, we affirmed our prior decisions in *Matter of  L-G-*, *supra*, and *Matter of Davis*, *supra*, both of which held that a state drug conviction qualified as a "drug trafficking crime" for immigration purposes only if it was analogous to an offense that would be punishable as a felony under one of the three federal drug statutes referenced in § 924(c)(2).  To be punishable as a federal felony under this standard, the analogous federal offense must be one that carries a term of imprisonment of more than 1 year.  *See* 18 U.S.C. § 3559(a)(5) (2000).

When we issued our decisions in *Matter of Davis* and *Matter of L-G-*, few of the federal circuit courts of appeals had interpreted the relevant language of § 924(c)(2).  Therefore, in the absence of compelling circuit authority, we construed § 924(c)(2) in a manner that we believed would both fairly resolve the cases before us and provide a coherent "federal standard" that could be applied uniformly throughout the country, without regard to the idiosyncrasies of state law.  During the 4 years following our decision in *Matter of L-G-*, however, an increasing number of federal circuit courts issued decisions, in the context of federal criminal law, interpreting § 924(c)(2) in a manner contrary to our approach. This development prompted us to revisit the issue in *Matter of K-V-D-*, *supra*.

In *Matter of K-V-D-*, we concluded that, in the interest of a uniform immigration policy, our interpretation of § 924(c)(2) should be retained in cases arising under the federal immigration laws, even though the federal circuit court in whose jurisdiction the proceedings arose had adopted a different interpretation of the same statute in its criminal law cases.  The clear trend among the circuit courts has been toward interpreting the term "felony,"

as used in § 924(c)(2), by reference to the definition set forth at 21 U.S.C. § 802(13), which permits a state drug offense that is classified as a felony under the law of the convicting state to qualify as a felony under the CSA even if it could only be punished as a misdemeanor under federal law. *See United States v. Hernandez-Avalos*, *supra*; *United States v. Ibarra-Galindo*, 206 F.3d 1337 (9th Cir. 2000), *cert. denied*, 531 U.S. 1102 (2001); *United States v. Simon*, 168 F.3d 1271 (11th Cir.), *cert denied*, 528 U.S. 844 (1999); *United States v. Briones-Mata*, 116 F.3d 308 (8th Cir. 1997); *United States v. Cabrera-Sosa*, 81 F.3d 998 (10th Cir. 1996); *United States v. Restrepo-Aguilar*, 74 F.3d 361 (1st Cir. 1996).

By contrast, two circuit courts have adopted an interpretation of § 924(c)(2) identical to that articulated in our decisions, at least in immigration cases. *See Gerbier v. Holmes*, 280 F.3d 297 (3d Cir. 2002); *Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996). The Third Circuit has not yet had occasion to interpret the relevant language of § 924(c)(2) in the criminal context; however, it has concluded, both in the interest of national uniformity and as matter of proper statutory construction, that the Board's interpretation should be adopted in immigration cases. *See Gerbier v. Holmes*, *supra*, at 308-12. As the Second Circuit made clear in *Aguirre*, however, it adopted the Board's approach out of a desire for a uniform national rule, and not necessarily because it agreed with our interpretation of 18 U.S.C. § 924(c)(2). *See Aguirre v. INS*, *supra*, at 317 (stating that "[t]he statutory point [regarding the proper interpretation of § 924(c)(2)] is fairly debatable"). Indeed, the Second Circuit has subsequently confined *Aguirre* to cases arising in the immigration context; in criminal cases, it has adopted the approach of the majority of its sister circuits. *See United States v. Pornes-Garcia*, 171 F.3d 142 (2d Cir.), *cert. denied*, 528 U.S. 880 (1999).

We recognize that *Gerbier* and *Pornes-Garcia* have either explicitly or implicitly endorsed our conclusion, adopted in *Matter of K-V-D-*, *supra*, that the language of § 924(c)(2) may, in the interest of a uniform immigration policy, be interpreted differently in immigration cases and criminal cases. Importantly, however, several circuits that adopt the dominant interpretation of § 924(c)(2) have either expressly rejected this "bifurcated" approach or cast it into serious doubt. *See United States v. Hernandez-Avalos*, *supra*, at 509 (rejecting *Pornes-Garcia* in the Fifth Circuit and stating, "We fail to see the validity of interpreting [§ 924(c)(2)] differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance."); *Ruiz-Romero v. Reno*, 205 F.3d 837, 839-40 (5th Cir. 2000) (same); *United States v. Ibarra-Galindo*, *supra*, at 1340 n.2 (stating in the Ninth Circuit that "we have never even suggested that we would interpret 18 U.S.C. § 924(c)(2) differently in applying the Immigration and Nationality Act than we now interpret it in applying the Sentencing Guidelines"). Given

this division of authority among the circuits as to whether the language of § 924(c)(2) may be subject to variable interpretations, it appears that a truly uniform interpretation of section 101(a)(43)(B) of the Act will remain an elusive goal. Because uniformity is presently unattainable in this context, we find that continued adherence to the standard adopted in *Matter of K-V-D-*, *Matter of L-G-*, and *Matter of Davis*, no longer makes sense, particularly in light of the interpretive problems with that "hypothetical" approach discussed previously. Consequently, we conclude that the best approach is one of deference to applicable circuit authority.

## C.   Reexamination of *Matter of K-V-D-*

The foregoing discussion shows that a majority of the federal circuit courts of appeals that have interpreted the pertinent language of § 924(c)(2) have, either explicitly or implicitly, disagreed with our rulings in *Matter of K-V-D-*, *Matter of  L-G-*, and *Matter of Davis*. Moreover, they have done so for substantive legal reasons, based upon their interpretation of the relevant statutory language. While *Pornes-Garcia* and *Gerbier* indicate that there may be policy considerations that would justify the adoption of differing interpretations of § 924(c)(2) in the criminal and immigration contexts, we nonetheless conclude that, under the present circumstances, these policy considerations are superseded by our overriding obligation to follow the authoritative decisions of the federal circuit courts of appeals regarding interpretation of a provision of federal criminal law that is referenced in the Immigration and Nationality Act. *See Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989). Accordingly, we withdraw from our decision in *Matter of K-V-D-*. We also withdraw from *Matter of L-G-* and *Matter of Davis* to the extent that they are inconsistent with our ruling today.

## IV.  INTERPRETATION OF § 924(c)(2) IN CIRCUITS THAT HAVE SPOKEN

Specifically, we hold that because the meaning of the phrase "drug trafficking crime" in 18 U.S.C. § 924(c)(2) is a matter of federal criminal law, we shall defer to the interpretation given that statute by the federal circuit courts of appeals that have spoken on the issue. Those courts need not defer to our reading of § 924(c)(2). *See Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638 (1990) (explaining that deference does not extend to an agency's interpretation of a judicially enforceable portion of a statute); *see also Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001) (rejecting the Board's interpretation of the phrase "crime of violence" under 18 U.S.C. § 16 (2000) and section 101(a)(43)(F) of the Act and stating that "[t]he BIA is not charged with administering 18 U.S.C. § 16, and that statute is not transformed into an

immigration law merely because it is incorporated into the INA by § 1101(a)(43)(F)"); *Dalton v. Ashcroft*, 257 F.3d 200, 203-04 (2d Cir. 2001) (applying de novo standard of review to the Board's interpretation of the phrase "crime of violence" under 18 U.S.C. § 16 and section 101(a)(43)(F) of the Act).  Thus, in those circuits that have spoken, the determination whether a state drug conviction constitutes a "drug trafficking crime" under § 924(c)(2), and therefore an aggravated felony under section 101(a)(43)(B) of the Act, shall be made by reference to applicable circuit law, and not by reference to any legal standard articulated by this Board.

## V.  INTERPRETATION OF § 924(c)(2) IN CIRCUITS THAT HAVE NOT YET SPOKEN

Where, as here, a division of authority exists among the circuits with respect to a legal issue, there is no approach we can adopt that will achieve uniformity.  For the reasons stated below, however, we hold that, where the relevant circuit court of appeals has not yet had occasion to interpret the phrase "drug trafficking crime" in § 924(c)(2), we will apply the interpretation of that phrase that has been adopted by the majority of the federal circuit courts.

In doing so, we do not intend to articulate a rule of general applicability for resolving issues which have been the subject of judicial interpretation but which have not yet been addressed in the jurisdiction of immediate concern. We have, however, four principal reasons, unique to the narrow circumstances before us, for applying the majority interpretation of § 924(c)(2) in circuits that have not yet had occasion to interpret that statute for themselves.  First, the dominant interpretation has been adopted by a solid majority of the circuits that have addressed it, including several whose precedents govern a very significant proportion of federal immigration cases.  Second, the majority interpretation of § 924(c)(2) bears considerable logical force and flows coherently and intuitively from the relevant statutory language.[5]  Third, the contrary view, which has only been embraced as a matter of statutory construction by a divided panel of the Third Circuit,[6] requires adjudicators to engage in an often-convoluted hypothetical analysis that can be difficult to

---

[5]  A number of circuits that have adopted the majority interpretation have found it significant that § 924(c)(2), by its terms, defines a "drug trafficking crime" as "any felony punishable under" the CSA and other enumerated federal laws, rather than as "any offense punishable as a felony under" those laws.  *See United States v. Ibarra-Galindo, supra*, at 1339; *United States v. Restrepo-Aguilar, supra*, at 366 n.9.

[6]  As previously noted, the Second Circuit adopted the Board's decision in *Matter of L-G-, supra*, for immigration cases only, out of a desire for nationwide uniformity, and not necessarily because it agreed with our interpretation of § 924(c)(2) as a matter of statutory construction.  *See Aguirre v. INS, supra*; *United States v. Pornes-Garcia, supra*.

apply in practice. Fourth, the Attorney General has not, to our knowledge, espoused an interpretation of § 924(c)(2), in the context of federal criminal prosecutions, that is different from that embraced by the majority of the circuit courts.

## VI.  APPLICATION TO RESPONDENT'S CASE

The respondent's removal hearing was held in Chicago, Illinois. Our determination whether the respondent's Illinois drug offenses constitute "drug trafficking crimes" under 18 U.S.C. § 924(c)(2) must be made by reference to standards articulated by the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit has not yet had occasion to interpret the relevant language of § 924(c)(2) in any precedent decision.[7] Consequently, pursuant to our previous discussion, we will apply the standard embraced by the majority of those circuits that have had occasion to interpret it.

As a threshold matter, we find that the respondent's state convictions for possession of cocaine are analogous to offenses punishable under the CSA. *See Matter of Barrett*, *supra*. Cocaine is a controlled substance under 21 U.S.C. § 812(c), sch. II(a)(4) (2000), and possession of a controlled substance violates 21 U.S.C. § 844(a). We now turn to the second relevant inquiry under section 101(a)(43)(B), i.e., whether the respondent's state offenses are "felonies" within the meaning of § 924(c)(2).

As previously noted, the respondent's offenses are classified as felonies under Illinois law. Under the interpretation of § 924(c)(2) adopted by the majority of circuit courts, an offense classified as a felony under the law of the convicting jurisdiction is deemed to be "classified by applicable Federal or State law as a felony," in accordance with 21 U.S.C. § 802(13). Moreover, because the respondent's offenses carried a maximum term of imprisonment of more than 1 year under Illinois law, they are also encompassed within the federal definitions of a "felony" and a "felony drug offense" set forth at 18 U.S.C. § 3559(a)(5) and 21 U.S.C. § 802(44), respectively. There is thus no question that the respondent's offenses constitute felonies punishable under the CSA, such that they may be considered "drug trafficking crimes" under § 924(c)(2) and aggravated felonies under section 101(a)(43)(B) of the Act. Hence, we need not now be concerned with how the Seventh Circuit would resolve potential issues arising by virtue of a particular state's felony/misdemeanor classification system.

The concurring and dissenting opinion asserts that our application of the majority interpretation of § 924(c)(2) is impermissibly retroactive in this case

---

[7] *See United States v. Santillan-Garcia*, No. 00 C 6873, 2001 WL 1442396, at *3 & n.2 (N.D. Ill. Nov. 14, 2001) (adopting the majority interpretation of § 924(c)(2) in a denaturalization case arising within the Seventh Circuit and predicting that the Seventh Circuit would adopt the same approach).

because the respondent relied on the Board's prior decisions when he entered his guilty pleas. *Matter of Yanez*, 23 I&N Dec. 390, 417 (BIA 2002) (Rosenberg and Espenoza, concurring and dissenting). We do not agree. On the contrary, we find that the respondent has not demonstrated, and cannot demonstrate, any such reliance.

The record contains no evidence that the respondent in the present case *actually* relied upon our decisions when he entered his guilty pleas. Indeed, the respondent could not possibly have relied upon *Matter of K-V-D-* because that decision was not issued until December 1999, more than 6 months after his second and final guilty plea in May 1999.[8] Although *Matter of L-G-* was issued in 1995, the respondent cannot seriously argue that he reasonably relied upon that decision when entering his guilty pleas. First, it is entirely possible that the respondent's second Illinois conviction for drug possession would have rendered him removable as an alien convicted of an aggravated felony even under the "analogous federal felony" approach embraced by *Matter of L-G-*. *See* 21 U.S.C. § 844(a)(1) (indicating that a second possession offense is punishable as a felony under the federal Controlled Substances Act). The success of the respondent's appeal depended not upon our following the *Matter of L-G-* standard, but rather upon our acceptance of his attempt to distinguish *Matter of L-G-* based on technical arguments regarding the finality of his first drug possession conviction.[9] The respondent could not reasonably have assumed that we would accept those arguments when he entered his guilty pleas. Our recognition that those arguments raise "substantial legal questions" does not imply that we find them persuasive. *Matter of Yanez*, *supra*, at 392.

Second, and equally important, *Matter of L-G-* stands in part for the very principle that informs our decision today—that we must follow applicable

---

[8] Although the concurring and dissenting opinion speculates that the respondent relied upon unpublished decisions of this Board that predated *Matter of K-V-D-*, such reliance would have been unwarranted under Seventh Circuit law. *See Guillen-Garcia v. INS*, 60 F.3d 340, 345-46 (7th Cir. 1995) (holding that "[u]npublished opinions of the Board of Immigration Appeals have no precedential value" and do not necessarily reflect the policy of the Board).

[9] Both the respondent and the concurring and dissenting opinion argue that the respondent's first conviction for cocaine possession was not "final" at the time of his second possession offense—within the meaning of 21 U.S.C. § 844(a)(1)—because he was still on probation at that time. Yet our reading of applicable Illinois law suggests that expiration of the 30-day appeal period provided under Rule 604(d) of the Rules of the Illinois Supreme Court placed the legal validity of the respondent's first conviction beyond legal challenge, despite the imposition of probation. *See, e.g.*, *People v. Johnson*, 762 N.E.2d 1180, 1183 (Ill. App. Ct. 2002) (citing *People v. Stueve*, 361 N.E.2d 579, 580-81 (Ill. 1977), and holding that "[w]hen no direct appeal is taken from an order of probation and the time for appeal has expired, a reviewing court is precluded from reviewing the propriety of that order in an appeal from a subsequent revocation of that probation, unless the underlying judgment of conviction is void" for lack of jurisdiction).

circuit authority when adjudicating cases involving the definition of a "drug trafficking crime" set forth in § 924(c)(2). Specifically, we acknowledged in *Matter of L-G-* that we were bound to follow the Second Circuit's decision in *Jenkins v. INS*, 32 F.3d 11 (2d Cir. 1994), in cases arising within that court's jurisdiction despite the fact that *Jenkins* conflicted with our interpretation of § 924(c)(2). *Matter of L-G-*, *supra*, at 101-02. Although we determined that our contrary reading of § 924(c)(2) would continue to be applied outside the Second Circuit, our approach to the *Jenkins* case strongly suggested that our reading of § 924(c)(2) was not authoritative, and that it would give way in the face of other circuit cases rejecting our approach. *Id.* Between our decision in *Matter of L-G-* and the respondent's second guilty plea in May 1999, four additional circuits issued decisions agreeing with *Jenkins* and implicitly or explicitly rejecting our contrary approach. *See United States v. Simon*, 168 F.3d 1271 (11th Cir. 1999); *United States v. Briones-Mata*, 116 F.3d 308 (8th Cir. 1997); *United States v. Cabrera-Sosa*, 81 F.3d 998 (10th Cir. 1996); *United States v. Restrepo-Aguilar*, 74 F.3d 361 (1st Cir. 1996).

Given the manifest absence of actual reliance by the respondent, as well as the lack of clear legal authority warranting such reliance at the time of his pleas, we find nothing inappropriate about applying the majority interpretation of § 924(c)(2) in the respondent's removal proceedings.[10]

---

[10] It is also not clear to us how a reviewing court would approach the retroactivity question raised by the concurring and dissenting opinion in a case where an alien provides persuasive evidence of actual detrimental reliance. In the first instance, it is questionable whether our construction of § 924(c)(2) may properly be designated a "rule," as asserted by the concurring and dissenting opinion. *Matter of Yanez*, *supra*, at 413 (Rosenberg and Espenoza, concurring and dissenting). As the concurring and dissenting opinion concedes, the circuit courts need not accord deference to our "interpretation" of § 924(c)(2) because "[s]ection 924(c)(2) is a criminal statute over which we, as an agency, have no particular expertise." *Id.* at 409. In light of this fact, it is not apparent to us how our deference to the circuit courts' authoritative interpretation of federal criminal law can constitute a retroactive application of federal immigration law.

The concurring and dissenting opinion also suggests that our decision today runs afoul of the "presumption against retroactivity" embodied in *INS v. St. Cyr*, 533 U.S. 289 (2001), and *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Matter of Yanez*, *supra*, at 415 (Rosenberg and Espenoza, concurring and dissenting). Yet it is by no means clear that the presumption against retroactivity of legislative enactments applies in the context of administrative adjudications. *See NLRB v. Bell Aerospace*, 416 U.S. 267, 293-95 (1974) (acknowledging the NLRB's power to announce a new rule through adjudication rather than formal rulemaking and placing the burden of proving detrimental reliance on the opponents of the rule); *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) (acknowledging the SEC's power to announce a new rule through adjudication and noting that the likely retroactive effect of such an adjudication was "not necessarily fatal to its validity"). Indeed, at least one court has observed that "retroactive application of new principles in adjudicatory proceedings is the rule,

(continued...)

## VII. RESPONDENT'S REMAINING ARGUMENTS

In addition to the arguments previously discussed, the respondent contends on appeal that his first cocaine possession offense did not result in a "conviction" for immigration purposes. Instead, he argues that it merely resulted in a conditional deferral of judgment and sentence of probation under a state rehabilitative statute. We find that the respondent's January 5, 1998, plea of guilty, which was followed by the imposition of a fine and a restraint on his liberty in the form of probation, meets the definition of a "conviction" set forth at section 101(a)(48)(A)(ii) of the Act. *See Matter of Punu*, Interim Decision 3364 (BIA 1998). In any event, the respondent's second state conviction for felony possession of cocaine is sufficient, standing alone, to render him removable as an alien convicted of an aggravated felony under the majority interpretation of § 924(c)(2) that has been applied in this case.

Further, the respondent asserts that an interpretation of § 924(c)(2) that permits his simple possession offenses to constitute "drug trafficking crimes" is violative of his right to due process of law. We are aware of no constitutional doctrine that prohibits Congress from defining criminal law terms of art, such as "drug trafficking crime," in whatever manner it sees fit. In any event, however, this Board lacks authority to pass judgment on the constitutionality of the Immigration and Nationality Act or any provision thereof. *See, e.g.*, *Matter of Rodriguez-Carrillo*, Interim Decision 3413 (BIA 1999); *Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992).

## VIII. CONCLUSION

In conclusion, we find that either of the respondent's Illinois convictions for felony possession of cocaine renders him removable as an alien convicted of

---

[10] (...continued)

not the exception." *Molina v. INS*, 981 F.2d 14, 23 (1st Cir. 1992) (upholding the Board's "retroactive" application of the definition of a "conviction" adopted in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988)).

Finally, even assuming that our statements regarding the meaning of § 924(c)(2) constitute "rules" with potential retroactive effect, we disagree with the concurring and dissenting opinion that our present adjudication is impermissibly retroactive under the five-part test referenced by the Seventh Circuit in *NLRB v. Wayne Transp.*, 776 F.2d 745, 751 & n.8 (7th Cir. 1985) (upholding NLRB's retroactive application of a new labor law rule in adjudicatory proceedings). While the issue in this case is admittedly not one of first impression, we reiterate our prior finding that the respondent did not, and could not, rely on our prior decisions when he entered his guilty pleas in Illinois because those cases did not represent a "well-established practice" at that time. *See Matter of Yanez*, *supra*, at 417 (Rosenberg and Espenoza, concurring and dissenting). In light of the respondent's possible removability even under the *Matter of L-G-* standard, moreover, it is not clear how he is "burdened" by our current decision. *See id.*

an aggravated felony under section 237(a)(2)(A)(iii) of the Act and precludes him from applying for cancellation of removal under section 240A(a) of the Act. The respondent has not requested any other form of relief from removal. Accordingly, the Immigration Judge properly ordered the respondent removed to Mexico.

**ORDER:** The appeal is dismissed.

*CONCURRING AND DISSENTING OPINION*: Lory Diana Rosenberg and Cecelia M. Espenoza, Board Members

We respectfully concur in part and dissent in part.

The statutory language classifying a "drug trafficking crime" as an aggravated felony offense can accommodate either the reading we have given it for the past 12 years or the changed reading that the majority now has determined to impose. *See* section 101(a)(43)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B) (2000) (referring to 18 U.S.C. § 924(c)(2) (2000)). At issue, in practical terms, is whether a state felony conviction for simple possession of a controlled substance should be interpreted so as to render a respondent removable based on a conviction for an aggravated felony, whether it should preclude an otherwise qualified refugee from being granted asylum or withholding of removal, and whether it should disqualify a lawful permanent resident from establishing eligibility for cancellation of removal, prevent him from demonstrating good moral character, and, ultimately, foreclose him from eligibility for naturalization.[1] *See, e.g.*, sections 101(f)(8), 208(b)(2)(B), 240A(a)(3), 241(b)(3)(B), 316 of the Act, 8 U.S.C. §§ 1101(f)(8), 1158(b)(2)(B), 1229b(a)(3), 1231(b)(3)(B), 1427 (2000).

The resolution of these questions turns, in large part, on the values we accord the various factors militating in favor of one reading or the other. The majority emphasizes the interests of expediency and acquiescence, and de-emphasizes the interests of narrow construction, uniformity, and due process.

We do not contend that the interpretation posited by the majority is unsupported or unsupportable. We are concerned, however, that the majority has simply abandoned a long-standing and defensible interpretation, which is legitimate for immigration law purposes, for a seemingly more straightforward

---

[1] The determination that a conviction for possession of a controlled substance is an aggravated felony also will render the lawful permanent resident ineligible for voluntary departure under section 240B(a)(1) of the Act, 8 U.S.C. § 1229c(a)(1) (2000); bar the lawful permanent resident from reentering the United States for 20 years without the permission of the Attorney General under sections 212(a)(9)(A)(i) and (ii)(II) of the Act, 8 U.S.C. §§ 1182(a)(9)(A)(i) and (ii)(II) (2000); and penalize the alien with imprisonment of up to 20 years under section 276(b)(2) of the Act, 8 U.S.C. § 1326(b)(2) (2000).

reading that does not require the Board to engage in any analysis of whether a conviction constitutes an immigration violation. Although the rationale posed by the majority may be attractive, in fact, the circuit court decisions interpreting 18 U.S.C. § 924(c)(2) are not as clear cut as the majority opinion would lead one to believe. Moreover, the majority's new interpretation has a significantly adverse impact on every respondent convicted of state felony possession of a controlled substance. At the very least, our modification of a rule that, for over a decade, determined whether a conviction for possession of a controlled substance constitutes an aggravated felony should be applied only prospectively.

## I. SECTION 101(a)(43)(B) OF THE ACT

The statutory language defining an aggravated felony offense under section 101(a)(43)(B) of the Act, quoted in full in the majority opinion, accommodates more than one reading. *See, e.g.*, *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *cf. Jenkins v. INS*, 32 F.3d 11 (2d Cir. 1994), *overruled by Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996). It is undisputed that this language is subject to judicial interpretation. *Gerbier v. Holmes*, 280 F.3d 297, 309 (3d Cir. 2002) ("Finding the phrase to be ambiguous, we must look to legislative history.").

Indeed, over the years, the reference to 18 U.S.C. § 924(c) in section 101(a)(43)(B) of the Act has been subject to differing interpretations at the federal court level. *See, e.g.*, *United States v. Restrepo-Aguilar*, 74 F.3d 361, 365 (1st Cir. 1996) ("There is no reason to suppose that either Congress or the Sentencing Commission, in defining 'aggravated felony' by reference to 18 U.S.C. § 924(c)(2), which in turn specifically relies on the CSA, was unaware of or chose to dismiss the definition of 'felony' provided there."); *cf. Gerbier v. Holmes*, *supra*, at 310 ("Although § 924(c)(2) directs us to the Controlled Substances Act, § 924(c)(2) does not reference § 802(13) and, moreover, that section defines "felony" only for purposes of sentence enhancements."). In addition, the United States Court of Appeals for the Second Circuit has followed our ruling in *Matter of L-G-*, *supra*, that "for purposes of the discretionary waiver, an offense qualifies as an 'aggravated felony' only if . . . it is analogous to a felony under the federal statutes enumerated in 18 U.S.C. § 924(c)(2)." *United States v. Pornes-Garcia*, 171 F.3d 142, 145-46 (2d Cir.) (distinguishing sentence enhancement cases in which an offense is deemed a "drug trafficking crime" under section 101(a)(43)(B) if "(1) the offense is punishable under the Controlled Substances Act, and (2) it is a felony under *either* state or federal law" (emphasis added)), *cert. denied*, 528 U.S. 880 (1999).

## A. Board Interpretation of the Term "Drug Trafficking Crime" as Defined in § 924(c)(2)

The Board's prior interpretation of § 924(c)(2) as applied to immigration violations is long-standing. In *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990), we examined the term "aggravated felony" relating to a drug offense[2] and concluded that the definition of a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) was broad enough to encompass state drug convictions. *Id.* at 175 (observing that "Congress referred to felonies 'punishable under' not 'convictions obtained under'" the Controlled Substances Act).[3] Subsequently, in *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), we concluded that a state drug conviction either had to be a felony under the law of the convicting state *and* contain a "trafficking element," i.e., involve "the unlawful trading or dealing of a controlled substance," *or* had to be for a crime "analogous to an offense punishable under one of the federal acts specified in 18 U.S.C. § 924(c)(2), *and* the offense to which it is analogous is a 'felony' under federal law." *Id.* at 543 (emphasis added).

In *Matter of L-G-*, *supra*, we considered whether the definition of a "felony" in the Controlled Substances Act at 21 U.S.C. § 802(13) (1994) indicated that every state felony was included in the definition of a "drug trafficking crime" under § 924(c)(2), and we rejected that approach. *Id.* at 93 ("[W]e do not find that . . . 'drug trafficking crime'. . . encompasses all of the state, as well as federal, felony offenses that are punishable under the federal drug laws, regardless of whether the offenses are punishable as felonies or misdemeanors under those federal laws."). We reasoned that because the definition of the term "felony" in 21 U.S.C. § 802 is specifically limited to its use "in this subchapter," and 18 U.S.C. § 924 does not incorporate the definitions of 21 U.S.C. § 802, it was more appropriate to look to the definition of a "felony" within Title 18, where § 924(c)(2) is located. *Matter of L-G-*, *supra*, at 94; *see also id.* at 104 (Holmes, concurring). Specifically, we found that the term "any felony" under § 924(c)(2) refers to any class of felony found under 18 U.S.C. § 3559(a) (1994), and, accordingly, a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) "is therefore any felony

---

[2] The classification of a conviction for certain drug offenses as an "aggravated felony" was incorporated into the Act by section 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4469-70 (effective Nov. 18, 1988) ("ADAA").

[3] The definition of an "aggravated felony" was amended by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, to include the phrase "any illicit trafficking in any controlled substance" and to make clear that the term "aggravated felony" applies to offenses "whether in violation of Federal or State law." *See Gerbier v. Holmes*, *supra*, at 305 ("This change, in effect, codified the BIA's holding in *Barrett*.") (citing H.R. Rep. No. 681, pt. 1, at 147 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6553).

violation of the federal drug laws, i.e., any offense . . . where the maximum term of imprisonment authorized exceeds 1 year." *Id.* at 94.

The fundamental elements of our prior interpretation, set forth in *Matter of Barrett*, *Matter of Davis*, and *Matter of L-G-*, have not been disturbed by the Attorney General at any time during the 12-year period in which we have applied them. Our interpretation in those cases has been applied to literally thousands of cases adjudicated in the period since *Matter of L-G-* was decided 7 years ago. Moreover, our interpretation of § 924(c)(2) has been implicitly reaffirmed by Congress, which took no action in its comprehensive revisions of the Act in 1996 to amend section 101(a)(43)(B) of the Act or to alter our interpretation of that provision.

In contrast, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), Congress specifically examined our precedents, addressing what constitutes a conviction and imposition of a sentence, and expressly modified our interpretation of these removal-relevant concepts. In doing so, Congress specifically singled out Board interpretations that it disapproved. *See, e.g.*, H.R. Conf. Rep. No. 104-828 (1996) ("Joint Explanatory Statement"). However, Congress did not object to our reasoning in *Matter of L-G-*, *supra*, and did not modify section 101(a)(43)(B) of the Act.[4]

It is axiomatic that Congress is deemed to be aware when it acts, not only of prior interpretations of a statute, but also of preexisting case law. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute."); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed. 1973). The presumption that Congress acted with such knowledge is particularly appropriate where Congress "exhibited both a detailed knowledge of the [incorporated] provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Lorillard v. Pons*, *supra*, at 581. Equally important, Congress is not presumed to change well-established legal precedent by silence. *American Hosp. Ass'n v. N.L.R.B.*, 499 U.S. 606, 613-14 (1991) ("If this amendment had been intended to place the importation limitation on the scope of the Board's rulemaking powers . . . we would expect to find some expression of that intent in the legislative history.").[5] Congress' selectivity

---

[4] This situation is inapposite to that in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), where the Court declared that later immigration enactments did not provide a basis for construing prior provisions of section 276(b) of the Act. *Id.* at 237. Here, by contrast, Congress did not disturb an existing agency interpretation published in a controlling precedent.

[5] As was the case in *INS v. St. Cyr*, 533 U.S. 289 (2001), the legislative history is significant because, despite its comprehensive character, it contains no evidence that Congress specifically considered the interpretation of section 101(a)(42)(B) of the Act. *Cf. Harrison v. PPG*

(continued...)

in modifying our interpretation of certain key definitions relating to criminal convictions, but leaving other interpretations intact, "strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the [existing] remedies and procedures." *Lorillard v. Pons*, *supra*, at 582. Although the fact that Congress did not expressly address and reverse our interpretation of the term "drug trafficking crime" in § 924(c)(2) does not preclude the majority from reconsidering the bases for our original interpretation and modifying our reading of the statute, Congress' inaction certainly signaled that our existing interpretation was a valid one.

### B. Circuit Court Interpretation of the Term "Drug Trafficking Crime" as Defined in § 924(c)(2)

It cannot be denied that a majority of circuit courts have differed with our interpretation of § 924(c)(2) and have concluded that the statute requires only that the offense be either a state or federal "felony punishable" under the Controlled Substances Act. *United States v. Restrepo-Aguilar*, *supra*, at 364; *see also Gerbier v. Holmes*, *supra*, at 307 ("To date, in addition to the First Circuit, the Second, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have also espoused this view in the Sentencing Guidelines context."). However, with the exception of the Fifth Circuit, none have explicitly extended their sentencing guidelines rulings to cases arising in the immigration context. *See United States v. Hernandez-Avalos*, 251 F.3d 505, 509 (5th Cir.) (ruling that "[w]e fail to see the validity of interpreting this statute differently based on this distinction"), *cert. denied*, 122 S. Ct. 305 (2001). Moreover, at the present time, two circuit courts have expressly left room for a different interpretation in the immigration context. Nevertheless, in the face of these varying interpretations and varying considerations, the majority abdicates to the rulings of circuit courts of appeals in criminal sentencing guidelines cases interpreting § 924(c)(2).

In *Matter of K-V-D-*, Interim Decision 3422 (BIA 1999), decided before *United States v. Hernandez-Avalos*, *supra*, we recognized that none of the circuit courts that differed with our interpretation in *Matter of L-G-*, *supra*, had expressly adopted a contrary interpretation in a case arising in the

---

[5] (...continued)

*Industries, Inc.*, 446 U.S. 578, 602 (1980) (Rehnquist, J., dissenting) ("In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night."), *cited in Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) (citing A. Doyle, *Silver Blaze*, in *The Complete Sherlock Holmes* 335 (1927)).

immigration context.[6] For instance, in *United States v. Pornes-Garcia*, *supra*, the Second Circuit recognized that "[t]he issue here is whether *that same narrow construction* [which was adopted by the Board] applies to section 2L1.2(b)(1)(A) of the Sentencing Guidelines." *Id.* at 143 (emphasis added). Although the Second Circuit did reconsider its ruling in *Jenkins v. INS*, 32 F.3d 11 (2d Cir. 1994), deciding to defer to *Matter of L-G-*, *supra*, the court did not merely defer without a reasoned opinion. *See Aguirre v. INS*, *supra*; *see also United States v. Pornes-Garcia*, *supra*; *cf. Matter of Yanez*, 23 I&N Dec. 390, 400 (BIA 2002).

Rather, in *Pornes-Garcia*, the Second Circuit explained clearly that the basis for the court's reconsidered ruling in *Aguirre* was its interest in nationwide uniformity. *Id.* at 147. The court acknowledged that the rule that the same term appearing in different portions of a single act is taken to have the same meaning in each appearance is not without its exceptions. *Id.* (citations omitted). Quoting the United States Supreme Court in *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932), the *Pornes-Garcia* court reasoned that "[w]here the subject matter to which the words refer is not the same . . . or the conditions are different, . . . the meaning well may vary to meet the purposes of the law." *United States v. Pornes-Garcia*, *supra*, at 147 (finding that the differing interpretations of § 924(c)(2) were warranted by the differing purposes of the provisions incorporating that term). Thus, in the face of government arguments that it should reconsider its deferential ruling in *Aguirre v. INS*, the Second Circuit expressly concluded that the phrase "any felony" in 18 U.S.C. § 924(c)(2) may be interpreted differently for purposes of applying the sentencing guidelines as opposed to enforcing the terms of the Immigration and Nationality Act. *Id.* at 147-48.

In addition, in *Gerbier v. Holmes*, *supra*, the Third Circuit endorsed the Board's analysis in *Barrett*, *Davis*, and *L-G-*, ruling that "[w]e find that the language in § 924(c)(2), which by its own terms is a *federal* sentence enhancement based on a firearms offense, applies only to *federal* crimes of violence or drug trafficking crimes." *Id*. at 308. The *Gerbier* court explained that "[w]hatever may be the proper construction in a Sentencing Guidelines case, we do not agree that the plain meaning of 'drug trafficking crime' under § 924(c) in the deportation context encompasses state felony convictions that would merely be misdemeanors under federal law when there is otherwise no trafficking component to the state law conviction." *Id.* at 307. The court concluded that a "hypothetical federal felony" analysis was appropriate, meaning that the court should examine whether the conviction

---

[6] Following the Fifth Circuit's ruling in *United States v. Hernandez-Avalos*, *supra*, we specifically acquiesced to its interpretation in cases arising in that circuit. *Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002).

was for a state drug possession offense that, if prosecuted under federal law, would amount to a felony. *Id.* at 308-10. The *Gerbier* court specifically looked to the 1988 amendments to § 924(c)(2), which "did nothing to change the fact that the felony violation must be of federal, not state, law." *Id.* at 309.

Furthermore, while the majority relies on the reasoning of the First Circuit in *United States v. Restrepo-Aguilar*, *supra*, at 366, that court recognized outright that "[t]he decision in *L-G-* did not involve any consideration of the aggravated felony sentence enhancement at issue here." The court observed, "At stake in *L-G-* was, instead, the petitioner's right to apply for asylum and request withholding of deportation under 8 U.S.C. §§ 1158 & 1253(h)." *Id.* Although the court acknowledged that our *L-G-* decision turned on the definition of an "aggravated felony" in 8 U.S.C. § 1101(a)(43), which, in relevant part, is the same as that provided in application note 7 to U.S.S.G. 2L1.2, it ruled that "*the relevant context was different.*" *Id.* (emphasis added). The First Circuit concluded that our recognition of the particular policy considerations underlying asylum and withholding determinations "does not convince us that Congress, *in creating the aggravated felony sentence enhancement . . .* intended *the same* result." *Id.* (emphasis added).

## C. Majority Opinion and Board Values

The majority abjures making any independent interpretation and insists it is only acquiescing to the decisions of the circuit courts of appeals. In fact, however, the majority elects to interpret the statutory language so that the term "felony," as defined in the Controlled Substances Act at 21 U.S.C. § 802(13), requires treating any state felony offense that is punishable under the statutes enumerated in 18 U.S.C. § 924(c)(2) as an aggravated felony, without regard to whether the offense would be punishable as a felony under federal law. In justification of this change, the majority essentially relies on three points. First, the majority raises concerns that "[t]he respondent's appeal *raises substantial legal questions* and *illustrates some of the difficulties* that can arise when applying the analytical approach we adopted in *Matter of K-V-D-*, *supra*." *Matter of Yanez*, *supra*, at 392 (emphasis added). Second, the majority articulates its concerns that *Matter of K-V-D-* interprets 18 U.S.C. § 924(c)(2) "in a manner that has not generally been followed by the federal criminal law courts." *Id.* Third, the majority concludes that because "uniformity is presently unattainable in this context . . . continued adherence to the standard adopted in *Matter of K-V-D-*, *Matter of L-G-*, and *Matter of Davis*, no longer makes sense." *Id.* at 396.

In short, the majority points out that the legal issues raised by the respondent are troublesome if we must construe them under our prior law. It would be much easier to simply follow the rulings of the federal circuit

courts of appeals in a related but not identical context, and the countervailing policy goal of applying a federal standard resulting in a uniform enforcement of the immigration law cannot be achieved anyway. We cannot agree with these reasons for abandoning our prior interpretation. If we are going to opt for a changed interpretation, we need better reasons.

As indicated above, 18 U.S.C. § 924(c) is a sentence enhancement statute, which elevates the penalty that may be imposed in the criminal context for certain offenses committed with firearms. We do not dispute that the circuit courts owe our prior interpretation, made in the deportation and removal context, little or no deference. Section 924(c)(2) is a criminal statute over which we, as an agency, have no particular expertise. *Gerbier v. Holmes*, *supra*, at 302 n.2 (citing *Drakes v. Zimski*, 240 F.3d 246, 250 (3d Cir. 2001)); *cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). However, a majority of the federal circuit courts that have interpreted the phrase "drug trafficking crime" have done so in the context of sentence enhancement cases addressing the definition of an "aggravated felony" as defined in section 101(a)(43)(B) of the Act. *Gerbier v. Holmes*, *supra*, at 308 n.9.

Notably, in *Matter of L-G-*, *supra*, we stated that "[w]e find *this less expansive interpretation* of 'drug trafficking crime' consistent with the statutory history of 18 U.S.C. § 924(c)(2)." *Id.* at 94 (emphasis added). In altering this long-standing interpretation of section 101(a)(43)(B) of the Act for immigration enforcement purposes, the majority gives no consideration to the principle that in construing the statute, our role is to apply the removal provisions of the Act narrowly. *See Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (recognizing that "deportation is a drastic measure and at times the equivalent of banishment or exile" (citing *Delgadillo v. Carmichael*, 332 U.S. 388 (1947))); *see also United States v. Pornes-Garcia*, *supra*, at 146-47 (recognizing the Board's "narrow" construction); *Reyes-Hernandez v. INS*, 89 F.3d 490, 492-93 (7th Cir. 1996) (recognizing the harsh consequences of deportation).

The Supreme Court has stated clearly that "we will not assume that Congress meant to trench on [the immigrant's] freedom beyond that which is required by the *narrowest of several possible meanings of the words used.*" *Fong Haw Tan v. Phelan*, *supra*, at 10 (emphasis added).[7] The Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), reflects that this rule applies

---

[7] We have followed this rule in more than 30 precedent decisions issued since 1949. *See, e.g.*, *Matter of Farias*, 21 I&N Dec. 269, 274 (BIA 1996; A.G., BIA 1997); *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989); *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *Matter of G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961); *Matter of K-*, 3 I&N Dec. 575 (BIA 1949). In so doing, we have consistently found that questions of deportability must be resolved in the alien's favor. *Matter of Serna*, 20 I&N Dec. 579, 586 (BIA 1992); *Matter of Chartier*, 16 I&N Dec. 284, 287 (BIA 1977).

even to interpretations of the plain language of the statute under the first prong of the test prescribed in *Chevron*, *U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 842. *INS v. St. Cyr*, *supra*, at 320 (recognizing "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'" (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987))). Thus, we are obliged to opt for the more narrow reading, i.e., the one that will result in less harsh removal consequences.

Moreover, the majority decision dismisses the uniformity concerns expressed in *Matter of L-G-*, *supra*, as unattainable.[8] In fact, however, the lack of uniformity created by the majority's interpretation will be equal to or greater than that currently existing under our interpretation in *L-G-* and *K-V-D-*. Under our most recent ruling in *Matter of K-V-D-* we acknowledged that we were required by principles of acquiescence to follow those circuit court decisions interpreting § 924(c)(2) in the context of immigration enforcement, and we have adhered to these principles. *See Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002). Accordingly, we must acquiesce to the rulings of the Second and Third Circuits, which, to date, have followed our interpretation in *Matter of L-G-*. *See Matter of K-V-D-*, *supra*; *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989).

In other circuits, however, the majority has ruled that we will apply the approach followed by the majority of circuit courts in sentencing guidelines decisions. *Matter of Yanez*, *supra*, at 397. The undesirable result will be that whether an individual is subject to removal and disqualified from virtually all forms of relief will turn on either state labels or circuit court jurisdiction, or both. *Cf. Taylor v. United States*, 495 U.S. 575, 592 (1990) (citing *United States v. Nardello*, 393 U.S. 286, 293-94 (1969)).

Because state court labels vary significantly, the same possession offense, committed in different jurisdictions, will yield widely varying immigration consequences. For example, simple possession of a controlled substance in Maryland is labeled as a misdemeanor and will not trigger aggravated felony consequences. *See* Md. Code Ann., Crimes and Punishments, § 287 (2001) (punishing unlawful possession or administering of a dangerous substance as a misdemeanor with the potential for imprisonment of up to 4 years). In contrast, just across the Potomac River, Virginia penalizes possession of most controlled substances as a Class 5 felony. Va. Code Ann. § 18.2-250 (Michie 2001). The same conduct in California could result in either a misdemeanor or a felony conviction, depending on the circumstances. *See* Cal. Health and Safety Code § 11350 (West 2002) (penalizing possession with imprisonment

---

[8] We have consistently sought to achieve uniformity in recent decisions interpreting various provisions of the Act. *See, e.g.*, *Matter of Rodriguez-Rodriguez*, Interim Decision 3411 (BIA 1999); *Matter of Roldan*, Interim Decision 3377 (BIA 1999); *Matter of A-P-*, Interim Decision 3375, at 9 n.6 (BIA 1999). *But see Matter of Salazar*, *supra*.

in either the county jail or state prison and defining a "felony offense" and "offense punishable as a felony" under § 11356 as an offense for which the law prescribes imprisonment in the state prison).

These disparities extend even to possession of less than 30 grams of marijuana, an offense that Congress expressly found would *not* be a deportable offense under the ground involving convictions relating to a controlled substance. *See* section 237(a)(2)(B)(I) of the Act; *Matter of L-G-*, *supra*, at 104 (Holmes, concurring). As the Third Circuit noted in *Gerbier v. Holmes*, *supra*, a person convicted of a single offense of simple possession of 30 grams or less of marijuana in North Dakota, where the offense is punishable as a felony, would be subject to removal on the basis of a conviction for an aggravated felony, without even the possibility of applying for cancellation of removal. *Id*. at 312 (citing N.D. Cent. Code § 19.03.1-23(6) (2000)). But a person convicted of the same offense in Montana, where the offense is only a misdemeanor, would not be subject to deportation under the aggravated felony classification without an opportunity to seek cancellation. *Id.* (citing Mont. Code Ann. § 45-102(2) (2001)).

Consequently, an alien in one state might be ineligible for cancellation of removal even though he committed the same exact crime as an alien in a different state, simply because the two states punish the same crime differently. As these disparate results are a real possibility, the majority interpretation completely undermines any effort to achieve a uniform immigration law. *See United States v. Pornes-Garcia*, *supra*, at 147 (stating that "'the interests of nationwide uniformity outweigh our adherence to Circuit precedent in this instance'" (quoting *Aguirre v. INS*, *supra*, at 317)); *see also Gerbier v. Holmes*, *supra*, at 311 ("Indeed, the policy favoring uniformity in the immigration context is rooted in the Constitution. *See* U.S. Const. art. I, § 8.").

## II. EFFECT OF THE BOARD'S CHANGED INTERPRETATION

Whether or not an alien convicted of possession of a controlled substance is subject to removal is not at issue. Any alien convicted of an offense relating to a controlled substance, regardless of whether his status is lawful or whether he is admitted for a temporary or permanent period, is subject to removal under section 237(a)(2)(B)(I) of the Act, 8 U.S.C. § 1227(a)(2)(B)(I) (2000). Furthermore, we have made certain that a state prosecution for first-time simple possession of a controlled substance will not be construed as constituting an exception to that rule by overruling our prior decision in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995). *Matter of Salazar*, *supra*; *Matter of Roldan*, Interim Decision 3377 (BIA 1999), *overruled in part by Lujan-Armendariz v. INS*, 222 F.3d 728, 745-49 (9th Cir. 2000).

Therefore, we concur in the majority's conclusion that the respondent remains removable from the United States under section 237(a)(2)(B)(I) of the Act as an alien convicted of a controlled substance violation. We also agree with the majority that, under *Matter of Punu*, Interim Decision 3364 (BIA 1998), the respondent was originally "convicted" on January 5, 1998. However, that is not the end of the matter.

### A. Effect of the New Rule on Removability and Relief from Removal

Under federal law, a first possession offense (for a controlled substance other than 5 grams or more of crack cocaine) is treated not as a felony, but as a misdemeanor. 21 U.S.C. § 844(a) (2000). However, a second possession offense committed after a "final conviction" for possession of a controlled substance may be treated as a felony under certain circumstances. *Id.* Therefore, construing the respondent's case under our "hypothetical federal felony" rulings in *Matter of L-G-*, *supra*, and *Matter of K-V-D-*, *supra*, the respondent's removability would not be dependent on "technical arguments" regarding the finality of his first drug possession conviction, as the majority suggests, but on a straightforward examination of that conviction as it would be treated under 21 U.S.C. § 844(a).[9] *Cf. Matter of Yanez*, *supra*, at 399.

The respondent's preadjudication probation for a 1997 Illinois drug possession violation was "terminated" and the respondent was "discharged" by the Illinois state court on May 27, 1999. Therefore, under Illinois law, the respondent did not have a final conviction for possession of a controlled substance at the time he committed the second drug possession offense, because he pled guilty to, and actually was convicted of, both his first and second offenses on May 27, 1999. *See People v. Sherrod*, 664 N.E.2d 1066, 1070 (1996) (McCuskey, J., specially concurring) ("Proceedings are not final until the trial court either: (1) makes a determination that the defendant successfully completed probation . . . or (2) makes a finding that the defendant violated the terms or conditions of probation, in which case a judgment of conviction may be entered and sentence imposed."). Under federal law, without a prior final conviction existing at the time the second possession offense was committed, the respondent's second offense could only be punished as a misdemeanor and would not qualify as an aggravated felony. *See* 21 U.S.C. § 844(a).

---

[9] Pursuant to our precedent ruling in *Matter of L-G-*, *supra*, we had consistently required a prior conviction to be "final" before the second offense of possession of a controlled substance was committed in order for the second offense to be considered a "hypothetical federal felony." *See, e.g.*, *Matter of Matic*, A72 446 565 (Nov. 9, 1998); *see also Matter of Villagrana*, A41 329 243 (July 19, 2001).

The effect of reading the statute as the majority does arguably changes the result in the respondent's case. According to the reading announced today, by virtue of a guilty plea entered in 1998 to the charge of possession of cocaine, a "class 4 felony" under Illinois law, the respondent has been convicted of an aggravated felony. *Matter of Yanez, supra,* at 391. If the offense is construed as an aggravated felony, an individual convicted of a single offense of drug possession is ineligible for most forms of discretionary relief such as asylum, cancellation of removal, and voluntary departure. He also may not apply for readmission to the United States without the consent of the Attorney General, and he is ineligible for a waiver. *See Guerrero-Perez v. INS,* 242 F.3d 727, 737 (7th Cir.), *reh'g denied,* 256 F.3d 546 (2001). In addition, an individual convicted of a crime relating to a controlled substance is most likely to be classified as having been convicted of a particularly serious crime, rendering him ineligible for withholding of removal. *See Matter of Y-L-, A-G- & R-S-R-,* 23 I&N Dec. 270 (A.G. 2002). Moreover, if convicted under 8 U.S.C. § 1324 for unauthorized reentry into the United States, such an individual is subject to a substantial sentence enhancement under U.S.S.G. § 2L1.2. *See United States v. Martinez-Carillo,* 250 F.3d 1101, 1102 (7th Cir. 2001). These consequences, which will now flow from a conviction for possession of a controlled substance, or a second offense committed before a first conviction became final, could not possibly have been anticipated.

## B. Due Process Concerns Relating to the New Rule

Our decision today significantly alters the Board's interpretation of section 101(a)(43)(B) of the Act. It changes the rules so that a respondent convicted of simple possession of a controlled substance now is removable based on an aggravated felony offense. It changes the consequences of removal so that he is ineligible for most forms of relief, is disqualified from naturalization, and is subject to far greater penalties if he returns to the United States without the permission of the Attorney General.

The majority's suggestion that our decision in *Matter of L-G-, supra,* did not set forth an authoritative interpretation of § 924(c)(2) on which a respondent could rely in a case arising in the immigration context is both contrary to regulation and at odds with practical reality.[10] *Cf.* 8 C.F.R. § 3.1(g) (2001). Even after a number of circuit courts issued alternative

---

[10] The majority's contention that our acquiescence in *Matter of L-G-* to the Second Circuit's ruling in *United States v. Jenkins, supra,* "strongly suggested that our reading of § 924(c)(2) was not authoritative," is simply an expression of wishful thinking on the majority's part. *Matter of Yanez, supra,* at 400. Within 6 months of our August 27, 1995, ruling, on March 22, 1996, the Second Circuit deferred to our ruling in *Matter of L-G-,* finding the rationale for our interpretation of the statute to be persuasive. *See Aguirre v. INS, supra.*

interpretations of § 924(c)(2) in criminal sentencing guidelines cases, we continued to invoke the reasoning in *Matter of L-G-* for our interpretation of the law.[11]

The Board's adjudicatory rulings are binding on Immigration Judges, officials of the Service, and the respondents who come before us in removal proceedings. 8 C.F.R. § 3.1(g). As early as 1947, the Supreme Court held that administrative agencies may properly use adjudication to "announc[e] and apply[] a new standard of conduct." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969). As an administrative tribunal, our adjudicatory rulings constitute an authoritative construction of the statute and are tantamount to regulations.[12] Accordingly, litigants have every reason to look to our precedents to govern their conduct and decisions made in relation to potential bases of removability and relief from removal.

We acknowledge that the "adjudicative forum can often be used to announce new principles applicable to the specific parties . . . even if the principles involve a change from past policies." *Ruangswang v. INS*, 591 F.2d 39, 44 (9th Cir. 1978); *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290-95 (1974). There is no dispute that "'regulatory agencies do not establish rules of condut to last forever.'" *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (quoting *American Trucking Assoc., Inc. v. Atchison, Topeka & Santa Fe Ry.*

---

[11] Contrary to the majority's contention that the respondent could not have relied on our adherance to *Matter of L-G-*, *supra*, because *Matter of K-V-D-*, *supra*, was decided after he entered his May 1999 guilty pleas, our reading of § 924(c)(2) was uniformly applied. We consistently issued unpublished decisions indicating that we would not follow circuit court sentencing guidelines decisions construing section 101(a)(43)(B) of the Act and would adhere to our ruling in *Matter of L-G-*. *See, e.g.*, *Matter of Zuniga*, A41 268 067 (Mar. 17, 1999); *Matter of Garcia*, A90 266 293 (Feb. 24, 1999); *Matter of Martinez,* A91 275 632 (Feb. 22, 1999); *Matter of Valle*, A39 089 782 (Feb. 19, 1999), *available at* http://www.usdoj.gov/eoir/vll/libindex.html*. All of these decisions, and others like them, predated the respondent's second guilty plea and final conviction, and several of them discussed the limitation imposed by the absence of a final conviction when a second offense was committed. *See, e.g.*, *Matter of Matic*, *supra*; *see also Matter of Valle*, *supra*. Unlike *Guillen-Garcia v. INS*, 60 F.3d 340, 345-46 (7th Cir. 1995), in which the Seventh Circuit found that the facts were sufficiently distinguishable from those in an unpublished decision "to allow us to conclude that there was no inconsistency in the decisions," the "indexed" decisions listed on our website involved a common question of law.

[12] Our "'(a)djudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein. See H. Friendly, The Federal Administrative Agencies 36-52 (1962).'" *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807 (1973) (quoting *NLRB v. Wyman-Gordon Co.*, *supra*, at 765-66); *see also Ruangswang v. INS*, 591 F.2d 39, 44 n.6 (9th Cir. 1978) (noting that "the 'agency' is the Department of Justice, because both the Immigration and Naturalization Service and the Board of Immigration Appeals are arms of the Department").

*Co.*, 387 U.S. 397, 416 (1967)). Likewise, an agency must be given ample latitude to "'adapt [its] rules and policies to the demands of changing circumstances.'" *Id.* (quoting *Permian Basin Area Rate Cases*, 390 U.S. 747, 784 (1968)).

Although we may modify our interpretation, however, a change may be arbitrary or capricious when it is more than a mere refinement of an existing standard and an affected party has detrimentally relied on the old standard. *See NLRB v. Bell Aerospace Co.*, *supra*, at 294-95; *see also Ruangswang v. INS, supra*, at 44-45. A change in interpretation made through "adjudication might also be inappropriate where 'some new liability' results from 'past actions which were taken in good-faith reliance on Board pronouncements.'" *Ruangswang v. INS*, *supra*, at 44 (quoting *NLRB v. Bell Aerospace Co.*, *supra*, at 295). That is the case here.

These limitations reflect the now-familiar presumption against retroactivity recently affirmed and applied to immigration cases by the Supreme Court. *INS v. St. Cyr*, *supra*. That is, the retroactive application of a new rule should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994); *see also Martin v. Hadix*, 527 U.S. 343, 352 (1999); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). By now, it is universally accepted that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *INS v. St. Cyr*, *supra*, at 316 (quoting *Landgraf v. USI Film Products*, *supra*, at 265-66); *see also Jideonwo v. INS*, 224 F.3d 692, 696-97 (7th Cir. 2000).

Thus, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal" and should govern here. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring); *see also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."). Similarly, in *SEC v. Chenery Corp.*, *supra*, the Court declared that any retroactivity resulting from the introduction of a new standard through adjudication "must be balanced against the mischief of producing a result which is contrary to a statutory design *or to legal and*

*equitable principles*." *Id.* at 203 (emphasis added);[13] *see also Gill v. INS*, 666 F.2d 390, 392 (9th Cir. 1982).

The Supreme Court has noted that although "the strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, the basic protection against 'judgments without notice' afforded by the Due Process Clause is implicated by civil penalties." *Shaffer v. Heitner*, 433 U.S. 186, 217 (1977) (Stevens, J., concurring in judgment). Thus, while Congress may enact laws having retroactive effect, due process requires that there be a separate justification for retroactivity. *Pension Benefit Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 729-30 (1984).

Furthermore, even where an appellate court applies "the law in effect at the time that it renders its decision," applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 716 (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. *Id.* at 720; *see also Kopec v. City of Elmhurst*, 193 F.3d 894, 904 n.7 (7th Cir. 1999) (noting that the "judicial default" rules employed in determining whether a statute should be applied retroactively include the "manifest injustice" test).

In the Seventh Circuit, in which this case arises, the court has held that retrospective changes in deportation laws violated the due process rights of affected aliens. *Jideonwo v. INS*, *supra*; *see also Reyes-Hernandez v. INS*, *supra*, at 493 (disapproving of "mouse-trapping" respondents who conceded deportability in reliance on the opportunity to apply for a waiver). Indeed, the Seventh Circuit has recognized that the "'function of filling in the interstices of regulatory statutes should be performed, as much as possible, through [the] quasi-legislative promulgation of rules to be applied in the future.'" *NLRB v. Federal Sec., Inc.*, 154 F.3d 751, 755 (7th Cir. 1998) (alteration in original) (quoting *SEC v. Chenery Corp.*, *supra*, at 202).

---

[13] The majority appears to miss the point that the Supreme Court's concerns relating to notice and an individual's ability to conform his conduct to what the law is make up the "legal and equitable principles" that warrant an exception to an agency's power to announce a new rule through adjudication. *SEC v. Chenery Corp*, *supra*, at 203; *cf. Matter of Yanez*, *supra*, at 400 n.10. In fact, in *Molina v. INS*, 981 F.2d 14, 21 (1st Cir. 1992), the First Circuit intimated that it might accept amici's argument that the agency's failure to change the pre-*Ozkok* definition through rulemaking or "by overruling its prior case *with prospective effect only*" was unlawful, but that it could not find reasonable reliance on Molina's part because the standards in the Board's prior decision "were, at best, ambiguous with respect to a person in Molina's situation." That is not the case here. Moreover, since the Supreme Court's decision in *INS v. St. Cyr*, *supra*, at 322-23, the necessity of showing actual reliance by a respondent who entered a plea is questionable.

Accordingly, before we apply a new rule to past conduct resulting in removal consequences, we should look to the five factors articulated in *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972), which have been adopted by the Seventh Circuit and six other circuit courts of appeals. *See NLRB v. Wayne Transp.*, 776 F.2d 745, 751 (7th Cir. 1985). This five-factor test examines (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the burden that a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

Applying this five-factor test, we must conclude that the change resulting from the majority opinion is retroactive and should not be applied to the respondent's case or to any case in which a respondent pled guilty to simple possession of a controlled substance in reliance on our decisions in *Matter of L-G-*, *supra*, and *Matter of K-V-D-*, *supra*. In *INS v. St. Cyr*, *supra*, the Supreme Court recognized that "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* at 322 (citations omitted). The court also noted that "preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 323. Contrary to the majority's contention, the question is not one of actual reliance, but one of presumptive reliance.

The majority's interpretation of a "drug trafficking crime" is not a matter of first impression, but represents a departure from the reading we applied for over a decade. Moreover, we expressly considered the differing interpretation applied in many circuit court sentencing guidelines cases and specifically reaffirmed *Matter of L-G-*, *supra*, indicating we would continue to follow our reading unless expressly instructed to do otherwise as the result of a circuit court ruling. The respondent, and other aliens like him, in deciding whether to forego their right to a trial, almost certainly relied upon our decisions in *Matter of L-G-* and *Matter of K-V-D-* and depended on the likelihood that conviction for possession of a controlled substance would not be treated as an aggravated felony, or bar their opportunity to seek cancellation relief or naturalization.

Undoubtedly, once again, "'[a]ll of these people, and no doubt many others, had settled expectations to which they conformed their conduct.'" *INS v. St. Cyr*, *supra*, at 324 n.52 (quoting *Matter of Soriano*, 21 I&N Dec. 516, 528 (Rosenberg, concurring and dissenting)). Therefore, we must conclude that the majority exceeds the bounds of fairness in issuing this decision. *See INS v. St. Cyr*, *supra*; *Ruangswang v. INS*, *supra*, at 44 ("We are, however,

417

convinced that what the Board seeks to do . . . is beyond the bounds of that which is permissible under Bell. The adverse consequences voluntary departure at best, and deportation at worst are certainly substantial.").

In the end, if there is "any unease with the policy implications of the statute in question," the Seventh Circuit has ruled that such matters are "within the province of Congress and not the judicial branch." *Guerrero-Perez v. INS*, *supra*, at 737. Perhaps this unprecedented ruling of the Board, overturning a 12-year-old interpretation, provides a basis on which Congress should be asked to speak specifically as to the way in which it wishes us to determine the fate of lawful residents and other respondents who have been convicted of simple possession of a controlled substance.

## III. CONCLUSION

Our adjudication changing the interpretation of a statutory provision that carries such extreme consequences cannot be based on expediency. We therefore cannot agree that the easiest reading is the correct one. Moreover, we view the majority's interpretation of the statute as unnecessarily imposing a retroactive interpretation on thousands of respondents who have been convicted of simple possession of controlled substances. This is an excessive and unwarranted reading of the statute. Accordingly, we concur in part and dissent in part.